**Lake Perriguey,** OSB No. 983213
lake@law-works.com
**LAW WORKS LLC**
1906 S.W. Madison Street, Ste 201
Portland, Oregon 97205
Telephone: (503) 227.1928
Facsimile: (503) 334.2340

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **BETH SCHMIDT**, <br><br> an individual <br><br> Plaintiff <br><br> v. <br><br><br> **MID-WILLAMETTE VALLEY COUNCIL OF GOVERMENTS**, an Oregon public entity, and **McRAE CARMICHAEL**, in her individual and official capacities, <br><br> Defendants | Case No. 6:26-cv-00002 <br><br><br><br> **COMPLAINT** <br><br> Jury Trial Requested |

INTRODUCTION

1. As recognized by the Supreme Court of the United States, "Speech by citizens on matters of public concern lies at the heart of the First Amendment." *Lane v. Franks*, 573 U.S. 228, 235 (2014).

2. This constitutional right to freedom of speech also protects individuals who are employed

by governmental entities: "public employees *do not renounce their citizenship* when they accept employment, and this Court has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights." *Id.* (italics added).

3.  Plaintiff Beth Schmidt was an employee of the Mid-Willamette Valley Council of Governments ("MWVCOG"), a public entity, and was terminated for wearing a shirt with a Norman Rockwell painting depicting the young Ruby Bridges on her historic walk to school during which she was the first student to integrate New Orleans' grade school after the *Brown v. Board of Education* decision resulted to an end to legal school racial segregation. The painting is an iconic, non-obscene, and historically celebrated work of American art.

4.  Plaintiff's termination was carried out by Defendant McRae Carmichael, acting under color of state law.

5.  Defendants' actions violated Plaintiff's federal and state constitutional rights and state statutory rights, causing Plaintiff economic loss, emotional distress, and damage to her reputation.

## PARTIES

6.  Plaintiff Beth Schmidt is a resident of the State of Oregon.

7.  Defendant Mid-Willamette Valley Council of Governments is public consortium made of Cities and Counties throughout Marion, Polk, and Yamhill Counties.

8.  Defendant McRae Carmichael was at all relevant times an employee, supervisor, and decision-maker for MWVCOG, acting within the scope of employment and under color of state law.

JURISDICTION AND VENUE

9. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

10. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

11. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, including claims arising under Article I, section 8 of the Oregon Constitution and ORS chapter 659A.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Oregon and Defendants reside or operate in this District.

FACTUAL ALLEGATIONS

13. Plaintiff was employed by MWVCOG as the Safe Routes to School Program Coordinator. This role included community outreach, public education, and equity focused programming. Plaintiff had a positive employment history and was not subject to discipline prior to the incidents she alleges.

14. As part of her official job duties, Plaintiff conceived, developed, and implemented Ruby Bridges Walk to School Day in Oregon—an educational and civic program commemorating Ruby Bridges' historic integration of public schools and promoting civil rights, inclusion, and equal access to education. In 2022, one Salem, Oregon school participated in Ruby Bridges Walk to School Day. By 2025, 11 schools and 3200 students participated.

15. In 2024, Beth Schmidt worked with Senator Deb Patterson to introduce a Bill in the Oregon State Legislature that would recognize Ruby Bridges Walk to School Day every November 14 throughout the State of Oregon. In 2025, Senator Patterson and Schmidt worked to get Senate Bill 450 passed in both houses. The bill had bipartisan support and passed out of each

house. Governor Tina Kotek signed the bill into law on June 20, 2025. Oregon is the third state in the United States of America to pass such legislation. The bill had full support from the Ruby Bridges Foundation.

16. Recognized for her work in advocacy and leadership on Senate Bill 450, Ruby Bridges Walk to School Day, Plaintiff Beth Schmidt was selected for the following awards: The Mid-Willamette Valley Council of Governments Chair's Choice Award, and The Street Trust 2025 Safe Streets for All Award.

17. Plaintiff's work on **Ruby Bridges Walk to School Day** was praised, approved, and promoted by MWCOG and aligned with its stated mission of serving diverse communities and advancing equity.

18. On November 5, 2025, Plaintiff wore to work a shirt depicting the iconic Norman Rockwell painting, *The Problem We All Live With*, a widely recognized and mainstream piece of American art depicting Ruby Bridges being escorted by four federal marshals to an integrated school, as ordered by President Dwight D. Eisenhower. The image on the T-shirt accurately reproduced the historical painting, including background graffiti reflecting the racial hostility directed at Ruby Bridges in 1960. The painting includes a racial slur as part of that historical depiction. The inclusion of the slur is documentary and condemnatory in nature and reflects the racism confronted by Ruby Bridges; it does not endorse or promote the language depicted.



19. The artwork depicted on the shirt conveyed themes historically associated with Rockwell's work, including American life, civic values, and social reflection, and political life. The artwork reflected the truth of Ruby Bridges' walk to school, the very themes of public concern about which Plaintiff and MWVCOG had been promoting and educating the legislature and schools for the prior two years.

20. MWVCOG maintains an internal employment policy that prohibits employees from using racial slurs or engaging in racially harassing language in the workplace.

21. MWVCOG does not maintain a dress-code policy prohibiting political, historical, or expressive imagery on clothing.

22. On November 10th, 2025, the defendants held a meeting with Plaintiff Beth Schmidt at which time they had a long list of questions regarding the work that needed to be completed for Ruby Bridges Walk to School Day, which was to take place four days later, on November 14th, 2025. In this meeting, Defendant Carmichael asked Plaintiff Beth Schmidt to provide a list of the tasks were yet to be completed by Plaintiff and her staff. Defendant Carmichael forbid Plaintiff Schmidt from accepting the Ruby Bridges Walk to School Day Proclamation by the City of Salem at the City Council meeting that evening. The proclamation had been written by Plaintiff

in conjunction with Salem Mayor Julie Hoy. Defendant Carmichael told Plaintiff Schmidt that she was not permitted to appear at the City Council. Defendant Carmichael told Plaintiff Schmidt to tell the City Council she was unavailable. Defendant Carmichael told Plaintiff Schmidt that she was being pulled from attending all upcoming Ruby Bridges Walk to School Day events on Friday, November 14th, 2025.

23. Plaintiff Schmidt outlined the list of duties yet to be completed by her and her staff for the walks to be successful. Schmidt asked what was going on, and Carmichael stated that she didn't know, but once she spoke to their insurance company, CIS, they would let Plaintiff know later. After she left, Defendant Carmichael phoned Plaintiff Schmidt to inform her she had talked to CIS and wanted to assure Plaintiff that she was in no risk of losing her job. Defendant Carmichael asked Plaintiff Schmidt to come to a meeting with on November 12, 2025 at 8:30 am.

24. On November 12, 2025, Defendant Carmichael provided Plaintiff a letter indicating that the wearing of the shirt with the Norman Rockwell painting violated MWVCOG's policies and such "conduct constitutes prohibited harassment." Plaintiff was told that her employment was not in jeopardy and that she should not wear the shirt again as it could "potentially create a hostile work environment."

25. Plaintiff was assigned "several training modules".... "regarding diversity, equity, and inclusion." Plaintiff was warned that "failure to adhere to the conditions of this Written Warning"...."will result in more serious corrective action, up to and including discharge."

26. Defendant Carmichael reversed her prior prohibition, directing Plaintiff Schmidt to complete all the work and attend all of the events associated with the Ruby Bridges Walk to School Day.

27. After this meeting, Plaintiff did not wear the shirt again to work nor anywhere.

28. Three days later, on November 17, 2025, Defendant Carmichael terminated Plaintiff's employment, alleging that three people had complained about the shirt.

29. Defendants did not engage in progressive discipline, did not identify any legitimate business necessity, and did not apply dress-code standards in a content-neutral or consistent manner.  Defendants did not allege that Plaintiff herself spoke, directed, or used the racial slur toward any person, nor that Plaintiff engaged in harassment, threats, or discriminatory conduct.

30. Defendants applied the racial-slur policy to Plaintiff's historically accurate, third-person depiction of racism, rather than to any direct or contextualized use of racial language by Plaintiff.

31. Plaintiff's termination occurred despite the fact that Defendants had expressly tasked her with creating and promoting Ruby Bridges Walk to School Day and related civil-rights programming that necessarily involves confronting the same historical racism depicted in the Rockwell painting.

32. By terminating Plaintiff's employment for displaying a truthful depiction of racial hostility, Defendants imposed an unconstitutional orthodoxy requiring the sanitization of civil-rights history.

33. Defendants' actions chilled Plaintiff's speech and the speech of other public employees.

34. As a result of Defendants' actions, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, and reputational harm.

FIRST CLAIM FOR RELIEF
Civil Rights – 42 U.S.C. § 1983
(Against All Defendants)

35. Plaintiff incorporates Paragraphs 1–34.

36.  Plaintiff engaged in expressive conduct on matters of the highest public concern,

including racial justice, civil-rights history, and public education regarding desegregation.

37. Plaintiff's expression was contextual, historical, and condemnatory of racism and did not constitute racial harassment or unprotected speech.

38. Plaintiff's interest in engaging in this expression substantially outweighed any legitimate interest Defendants may assert in enforcing a racial-slur policy against third-person, historical depictions.

39. Defendants took adverse employment action against Plaintiff, including termination.

40. Plaintiff's expressive conduct—and specifically the inclusion of historically accurate language within the Rockwell painting—was a substantial or motivating factor in Defendants' decision to terminate her.

41. Defendants' application of a racial-slur policy to protected historical expression violated the First Amendment.

SECOND CLAIM FOR RELIEF<br>Civil Rights – Oregon Constitution<br>(Against All Defendants)

42. Plaintiff incorporates Paragraphs 1–34.

43. I, section 8 of the Oregon Constitution provides broader protection for expression than the First Amendment and prohibits government punishment of expression based on content or viewpoint.

44. Plaintiff's expression constituted truthful, historical, and political speech at the core of Article I, section 8 protections.

45. Defendants terminated Plaintiff by misapplying an internal racial-slur policy to suppress historically accurate expression that depicts racism.

46. Government punishment of speech because it truthfully depicts racial hatred—even when

offensive language is shown in context—is impermissible under Article I, section 8.

47. Defendants' actions constitute unlawful viewpoint-based retaliation.

### THIRD CLAIM FOR RELIEF
Unlawful Retaliation and Discrimination (ORS 659A)
(Against All Defendants)

48. Plaintiff incorporates Paragraphs 1–34.

49. Defendants terminated Plaintiff because she engaged in protected activity and because of her association with and advocacy for protected classes.

50. Defendants' actions violate ORS 659A.030 and related provisions.

### FOURTH CLAIM FOR RELIEF
Wrongful Discharge
(Against All Defendants)

51.  Plaintiff realleges paragraphs 1–34.

52. Plaintiff was terminated for exercising important job-related and societal rights, including free expression on matters of public concern.

53. Defendants' conduct contravenes Oregon public policy as embodied in Article I, section 8 and ORS chapter 659A.

### PRAYER FOR RELIEF

Plaintiff prays for:

A. Compensatory damages;

B. Punitive damages against individual defendants;

C. Prejudgment interest on any award of lost wages and lost benefits;

D. Attorney fees and costs pursuant to 42 U.S.C. § 1988 and Oregon law;

E. A declaration that defendants have committed the above violations of plaintiff's civil rights;

and

F. Such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

January 1, 2026                                    s/Lake Perriguey
                                                                Lake Perriguey, OSB No. 983213
*Attorney for Plaintiff*