Román D. Hernández, OSB No. 011730
rhernandez@cablehuston.com
Colin H. Milton, OSB No. 233800
cmilton@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201
Telephone: (503) 224-3092
Facsimile: (503) 224-3176

*Attorney for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| BETH SCHMIDT, an individual<br><br>Plaintiffs,<br><br>v.<br><br>MID-WILLAMETTE VALLEY COUNCIL OF GOVERNMENTS, an Oregon public entity, and McRAE CARMICHAEL, in her individual and official capacities,<br><br>Defendants. | Case No. 6:26-cv-00002<br><br>**MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Oral Argument Requested |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   LEGAL STANDARD................................................................................................ 2

III.  ARGUMENT.............................................................................................................. 3

    A.    Plaintiff Fails to Make the Prima Facie Case for First Amendment
    Retaliation and Therefore her Claims Against Defendants Must be
    Dismissed. ................................................................................................ 3

        1.    Plaintiff's T-Shirt Was Not Protected Speech and Therefore
        Plaintiff's First Amendment Retaliation Claims Fail as a Matter of
        Law. ................................................................................ 4

            a)  Plaintiff's T-Shirt Was Not on a Matter of Public Concern. ............... 5

            b)  Plaintiff's Speech Was Made as a Public Employee and as a Result
            Her Speech is Not Protected Speech Under the Pickering Balancing
            Test................................................................................ 7

        2.    Under the *Pickering* Balancing Test, Defendants' Interest in an
        Efficient Workplace Outweighs Plaintiff's First Amendment
        Interest in Wearing a T-Shirt with a Racial Slur on it. ............................. 8

            a)  The Defendants' Termination of Plaintiff was in the Legitimate
            Administrative Interest of Avoiding Workplace Disruption. ............... 9

            b)  Plaintiff's First Amendment Interests in Wearing a T-Shirt with a
            Racial Slur is Low.................................................................. 10

        3.    The *Pickering* Balancing Test Weighs in Favor of Defendants
        Because the Interest in Creating an Efficient Work Environment
        Outweighs Plaintiff's Interest in Wearing a T-Shirt With a Racial
        Slur on it................................................................................ 11

    B.    The First Amendment Retaliation Claim Brought Under Section 1983
    Must be Dismissed Against Defendant Carmichael Because Carmicheal is
    Entitled to Qualified Immunity................................................................. 12

    C.    The Section 1983 Claim Made Against MWVCOG Must Be Dismissed
    Because Liability Under Section 1983 Does Not Attach Under the Theory
    Of *Respondeat Superior* Nor Did Liability Attach Because MWVCOG
    Did Not Adopt Carmichael's Actions....................................................... 17

        1.    *Respondeat Superior* Does Not Apply to Section 1983 Claims
        Generally and Thus the Claim Against MWVCOG Must Be
        Dismissed as a Matter of Law................................................................ 17

        2.    Plaintiff has Failed to Establish Liability Against MWVCOG
        Under Section 1983........................................................................... 18

D.      The Court Must, as a Matter of Law, Dismiss Plaintiff's Claim for Wrongful Discharge Because Oregon Law Provides an Adequate Remedy for Plaintiff's Claim Wrongful Discharge Claim.................................................. 20

E.      Plaintiff's Claims Based on the Oregon Constitution Must be Dismissed as a Matter of Law Because no Private Cause of Action Exists Solely Under the Oregon Constitution for Damages. ..................................................... 21

F.      Plaintiff's Statutory Retaliation Claim Fails as a Matter of Law Because Plaintiff Did Not Engage in a Protected Activity. ............................................... 22

G.      Plaintiff's Statutory Claim of Discrimination Because of Association Fails as a Matter of Law Because Plaintiff did Not Associate with a Protected Class Nor Was Her Termination a Result of Any Association with a Protected Class.......................................................................................... 24

  1.      Plaintiff's Claim for Discrimination Because of Association Fails Because She Has Not Alleged an Association with a Protected Class. ................................................................................................ 25

  2.      Plaintiff's Claim for Discrimination Because of Association Fails Because She Has Not Alleged Her Termination Was Due to an Association with a Protected Class. ........................................................... 26

IV.     CONCLUSION........................................................................................................ 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Creighton*,
483 U.S. 635 (1987)................................................................................................ 14, 15

*Andrade-Tafolla v. United States*,
536 F.Supp.3d 764 (D. Or. 2021) ................................................................................ 2

*Arnold v. Pfizer, Inc.*,
970 F.Supp.2d 1106 (D. Or. 2013) ............................................................................ 21

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)............................................................... 13, 14, 15, 16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................. 2, 26

*Barrett v. Whirlpool Corp.*,
556 F.3d 502 (6th Cir. 2009) ..................................................................................... 25

*Battan v. Allwest Underground, Inc.*,
No. 08-CV-707-BR, 2008 WL 4191467 (D. Or. Sept. 5, 2008)................................. 21

*Bd. of Cnty. Comm'rs v. Umbehr*,
518 U.S. 668 (1996).................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................ 2, 3, 25, 26

*Bethel Sch. Dist. No. 403 v. Fraser*,
478 U.S. 675 (1986).................................................................................................. 16

*Brown v. Chicago Bd. of Educ.*,
824 F.3d 713 (7th Cir. 2016) ..................................................................................... 16

*Burch v. City of Chubbuck*,
146 F.4th 822 (9th Cir. 2025) ................................................................................. 4, 7

*Chateaubriand v. Gaspard*,
97 F.3d 1218 (9th Cir. 1996) ...................................................................................... 6

*City and Cnty. of San Francsico v. Sheehan*,
575 U.S. 600 (2015)................................................................................................... 14

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) ........................................................................................ 18, 20

*Collins v. City of San Diego*,
  841 F.2d 337 (9th Cir. 1988) .................................................................................. 17

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................................... 2

*Connick v. Myers*,
  461 U.S. 138 (1983) .............................................................................................. 5, 9

*Connick v. Thompson*,
  563 U.S. 51 (2011) ............................................................................................ 17, 18

*Cuddigan-Placito v. State Accident Insurance Fund*,
  335 Or. App. 663, 560 P.3d 715 (2024) .................................................................. 23

*Cuevas v. City of Tulare*,
  107 F.4th 894 (9th Cir. 2024) ................................................................................. 13

*Dahlia v. Rodriguez*,
  735 F.3d 1060 (9th Cir. 2013) .................................................................................. 4

*Damiano v. Grants Pass Sch. Dist. No. 7*,
  140 F.4th 1117 (9th Cir. 2025) ....................................................................... 3, 9, 11

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) ...................................................................................... 14, 16, 17

*Dodge v. Evergreen Sch. Dist. #114*,
  56 F.4th 767 (9th Cir. 2022) ....................................................................... 4, 5, 7, 15

*E.E.O.C. v. Crown Zellerbach Corp.*,
  720 F.2d 1008 (9th Cir. 1983) ................................................................................ 23

*Elder v. Holloway*,
  510 U.S. 510 (1994) ................................................................................................ 14

*Farrimond v. Louisiana-Pacific Corp.*,
  103 Or. App. 563, 798 P.2d 697 (1990) .................................................................. 21

*Galbraith v. Cnty. of Santa Clara*,
  307 F.3d 1119 (9th Cir. 2002) ................................................................................ 20

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ........................................................................................... 5, 7, 8

*Gilbrook v. City of Westminster*,
　177 F.3d 839 (9th Cir. 1999) ................................................................................... 6

*Gillette v. Delmore*,
　979 F.2d 1342 (9th Cir. 1992) ..................................................................... 18, 19, 20

*Gordon v. Cnty. of Orange*,
　6 F.4th 961 (9th Cir. 2021) ..................................................................................... 14

*Greisen v. Hanken*,
　925 F.3d 1097 (9th Cir. 2019) ................................................................................... 4

*Groten v. California*,
　251 F.3d 844 (9th Cir. 2001) ................................................................................... 13

*Grutzmacher v. Howard Cnty.*,
　851 F.3d 332 (4th Cir. 2017) ................................................................................... 11

*Harlow v. Fitzgerald*,
　457 U.S. 800 (1982) ................................................................................................ 13

*Hernandez v. City of Phoenix*,
　43 F.4th 966 (9th Cir. 2022) ............................................................................... 6, 11

*Holcomb v. Iona College*,
　521 F.3d 130 (2d Cir. 2008) .................................................................................... 24

*Howard v. City of Coos Bay*,
　871 F.3d 1032 (9th Cir. 2017) ................................................................................... 3

*Hunter v. Bryant*,
　502 U.S. 224 (1991) ................................................................................................ 13

*Hunter v. City of Eugene*,
　309 Or. 298, 787 P.2d 881 (1990) .......................................................................... 21

*Jett v. Dallas Independent Sch. Dist.*,
　491 U.S. 701 (1992) .......................................................................................... 18, 19

*Johnson v. Multnomah Cnty.*,
　48 F.3d 420 (9th Cir. 1995) ...................................................................................... 5

*Johnson v. Poway Unified Sch. Dist.*,
　658 F.3d 954 (9th Cir. 2011) .................................................................................... 7

*Juran v. Independence Or. Cent. Sch. Dist. 13J*,
　898 F.Supp. 729 (D. Or. 1995) ............................................................................... 22

iii

*Kelley v. Borg,*
  60 F.3d 664 (9th Cir. 1995) .................................................................................... 15

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) .................................................................................. 20

*Liverman v. City of Petersburg,*
  844 F.3d 400 (4th Cir. 2016) .................................................................................... 6

*Mack v. South Bay Beer Distributors,*
  798 F.2d 1279 (9th Cir. 1986) ................................................................................ 19

*McGinest v. GTE Service Corp.,*
  360 F.3d 1103 (9th Cir. 2004) ................................................................................ 16

*Medina v. State,*
  278 Or. App. 579, 377 P.3d 626 (2016).................................................................. 22

*MGIC Indem. Corp. v. Weisman,*
  803 F.2d 500 (9th Cir. 1986) .................................................................................. 19

*Mithcell v. Forsyth,*
  472 U.S. 511 (1985).................................................................................................. 13

*Moran v. State of Washington,*
  147 F.3d 839 (9th Cir. 1998) ....................................................................... 10, 12, 15

*Moser v. Las Vegas Metro. Police Dep't,*
  984 F.3d 900 (9th Cir. 2021) ............................................................................ 11, 12

*Mullenix v. Luna,*
  577 U.S. 7 (2015)..................................................................................................... 14

*Nelson v. Lane Cnty.,*
  304 Or. 97, 743 P.2d 692 (1987) ............................................................................ 22

*O'Brien v. Welty,*
  818 F.3d 920 (9th Cir. 2016) .................................................................................. 13

*Papasan v. Allain,*
  478 U.S. 265 (1986)............................................................................................. 2, 25

*Pearson v. Callahan,*
  555 U.S. 223 (2009)................................................................................................. 14

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986)........................................................................................... 18, 19

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*,
   391 U.S. 563 (1968)..................................................................................................... 4

*Pitts v. G4S Secure Solutions (USA) Inc.*,
   No. 3:20-cv-00074-AC, 2020 WL 6333959 (D. Or. May 26, 2020)........................... 24, 25, 26

*Pool v. VanRheen*,
   297 F.3d 899 (9th Cir. 2002) .................................................................................... 5, 6

*Posey v. Lake Pend Oreille Sch. Dist. No. 84*,
   546 F.3d 1121 (9th Cir. 2008) .................................................................................... 7

*Procunier v. Navarette*,
   434 U.S. 555, (1978)................................................................................................... 13

*PSU Association of University Professors v. PSU*,
   352 Or. 697, 291 P.3d 658 (2012) ............................................................................ 22, 23, 24

*Rankin v. McPherson*,
   483 U.S. 378 (1987)................................................................................................... 10, 12

*Riley's American Heritage Farms v. Elsasser*,
   32 F.4th 707 (9th Cir. 2022) ..................................................................................... 3, 9

*Robinson v. York*,
   566 F.3d 817 (9th Cir. 2009) .................................................................................... 9

*Sampson v. Cnty. of Los Angeles*,
   974 F.3d 1012 (9th Cir. 2020) .................................................................................. 15

*Saucier v. Katz*,
   533 U.S. 194 (2001)................................................................................................... 13, 14

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .................................................................................. 2

*Suultaaq, Inc. v. Williams*,
   782 F.Supp.2d 795 (D. Alaska 2010) ...................................................................... 20

*Thomas v. City of Beaverton*,
   379 F.3d 802 (9th Cir. 2004) .................................................................................... 3, 5

*Thompson v. Central Valley Sch. Dist. No 365*,
   163 F.4th 654 (9th Cir. 2025) ................................................................... 9, 10, 11, 14, 16, 18

*Tornabene v. Nw. Permanente, P.C.*,
   156 F.Supp.3d 1234 (D. Or. 2015) ........................................................................... 24

*Ulrich v. City and Cnty. of San Francisco*,
  308 F.3d 968 (9th Cir. 2002) ............................................................................ 5, 6

*Waid v. Cnty. of Lyon*,
  87 F.4th 383 (9th Cir. 2023) ................................................................................. 13

*Walker v. Oregon Travel Information Council*,
  367 Or. 761, 484 P.3d 1035 (2021) ...................................................................... 20

*Walsh v. Consolidated Freightways, Inc.*,
  278 Or. 347, 563 P.2d 1205 (1977) ...................................................................... 21

*Waters v. Churchill*,
  511 U.S. 661 (1994)............................................................................................... 17

*Weeks v. Bayer*,
  246 F.3d 1231 (9th Cir. 2001) ................................................................................ 5

*White v. Pauly*,
  580 U.S. 73 (2017).................................................................................................. 15

*Wood v. Strickland*,
  420 U.S. 308 (1975)............................................................................................... 13

## Federal Statute

42 U.S.C. § 1983.................................................................................................... passim

## State Statues

O.R.S. § 190.010...................................................................................................... 2

O.R.S. § 190.080..................................................................................................... 20

O.R.S. § 190.080(1)(c)...................................................................................... 19, 20

O.R.S. § 659A.030............................................................................................ passim

O.R.S. § 659A.030(1)(b)......................................................................................... 24

O.R.S. § 659A.885.................................................................................................. 21

O.R.S. §§ 659A.885(1)–(3)..................................................................................... 21

O.R.S. §§ 30.260–30.300........................................................................................ 22

O.R.S. § 659A.030(1)(g).......................................................................................... 23

## Constitutions

Oregon Const. Art. I, § 8.................................................................................................. 21, 22

U.S. Const. amend. I ...................................................................................................... passim

## Rules

Fed. R. Civ. P. 8(a)(2)......................................................................................................... 2

Fed. R. Civ. P. 12(b)(6)................................................................................................... 1, 13

## LR 7-1 CERTIFICATION

Defendants certify that under Local Rule 7-1(a), the parties have conferred in a good faith effort to resolve this dispute and have been unable to do so.

## MOTION

Defendants move to Dismiss Plaintiff's First Claim for Relief, Second Claim for Relief, Third Claim for Relief, and Fourth Claim for Relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure and respectfully request that the Court grant this motion.

## I.    INTRODUCTION

Plaintiff Beth Schmidt ("Plaintiff") formerly worked as a Safe Routes to School Coordinator with the Mid-Willamette Valley Council of Governments ("MWVCOG"). (Compl. ¶ 13). On or about November 5, 2025, Plaintiff wore a t-shirt to work with a depiction of Norman Rockwell's 1964 painting, "The Problem We All Live With" on its front. (*Id.* ¶ 18). The painting depicts Ruby Bridges walking to school while flanked by U.S. Marshalls reflecting the real-world event that occurred on November 14, 1960. This painting and its copy on Plaintiff's t-shirt have the word "nigger" (hereinafter "n-word") clearly rendered in graffiti in the background of the image. (*Id.* ¶¶ 18–19). MWVCOG has a policy that prohibits employees from using racial slurs while in the workplace. (*Id.* ¶ 20).

On November 12, 2025, because of Plaintiff's wearing of the t-shirt with the n-word on it, Interim Executive Director of MWVCOG, McRae Carmichael ("Carmichael"), provided Plaintiff with a letter indicating that wearing the t-shirt was in violation of MWVCOG policies and "constitute[d] prohibited harassment." (*Id.* ¶ 24).

Page 1 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

On November 17, 2025, the decision was made to terminate Plaintiff's employment. (*Id.* ¶ 28). This decision was made because of multiple complaints MWVCOG had received about the Plaintiff's t-shirt and because the t-shirt violated MWVCOG policy. (*Id.* ¶¶ 28–29).

Defendants are the MWVCOG, a public entity created by a coalition of governments under O.R.S. § 190.010 (Id. ¶7), and Carmichael (Id. ¶ 8), then and current interim executive director of MWVCOG (collectively "Defendants").

## II.    Legal Standard

For a complaint to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint does not require "detailed factual allegations," but a complaint requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and then citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Furthermore, a complaint fails to meet its required standard under Federal Rule of Civil Procedure 8(a)(2) when it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

A complaint must also "contain sufficient factual allegations that 'plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Andrade-Tafolla v. United States*, 536 F.Supp.3d 764, 770–71 (D. Or. 2021) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

Page 2 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

678 (citing *Twombly*, 550 U.S. at 556). This plausibility requirement calls for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557).

### III.   ARGUMENT

#### A.   Plaintiff Fails to Make the Prima Facie Case for First Amendment Retaliation and Therefore her Claims Against Defendants Must be Dismissed.

The Court must dismiss Plaintiff's First Claim for Relief because Plaintiff has not demonstrated the *prima facie* case of First Amendment retaliation.

Plaintiff alleges that she was improperly retaliated against by Defendants in violation of U.S. Const. amend. I, (hereinafter "First Amendment") for wearing a t-shirt depicting Norman Rockewell's painting, "The Problem We All Live With." (Compl. ¶¶ 18–19, 35–41). She brings the claim under 42 U.S.C. § 1983 ("Section 1983") (Compl. ¶¶ 35–41).

To state a claim of First Amendment retaliation, Plaintiff must demonstrate that: "'(1) she engaged in protected speech; (2) the defendants took an adverse employment action against her; and (3) her speech was a substantial or motivating factor for the adverse employment action.'" *Howard v. City of Coos Bay*, 871 F.3d 1032, 1044 (9th Cir. 2017) (quoting *Thomas v. City of Beaverton*, 379 F.3d 802, 808 (9th Cir. 2004)). Plaintiff must make a showing of all three elements in order to make out the prima facie case of Plaintiff's First Amendment retaliation claim. *See Riley's American Heritage Farms v. Elsasser*, 32 F.4th 707, 721 (9th Cir. 2022). Even if a plaintiff can meet this burden, the burden then shifts to the government to either demonstrate: that the government's "'legitimate administrative interests in promoting efficient service-delivery and avoiding workplace disruption' outweigh the plaintiff's First Amendment interests[;]'" or that the government "'would have taken the same actions in the absence of the plaintiff's expressive conduct.'" *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1137 (9th Cir. 2025) (quoting *Riley's American Heritage Farms*, 32 F.4th at 721). The government meeting either of these

factors is dispositive and if the government demonstrates either, a plaintiff's claim fails. *Burch v. City of Chubbuck*, 146 F.4th 822, 833 (9th Cir. 2025) ("Only if the government fails *both* the fourth and fifth steps does the plaintiff establish a First Amendment violation.") (citing *Greisen v. Hanken*, 925 F.3d 1097, 1108 (9th Cir. 2019)) (emphasis in original). Put differently, Defendants "can avoid liability for retaliation by showing that it had a legitimate administrative interest in suppressing the speech that outweighed the plaintiff's First Amendment rights." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776–77 (9th Cir. 2022) (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). This burden shifting framework is called the *Pickering* balancing test. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1068 (9th Cir. 2013); *see also Pickering*, 391 U.S. 563.

At this stage, the Defendants contend that the Plaintiff has failed to carry her burden of proving the first element of the *Pickering* balancing test: that she engaged in protected speech. However, even if Plaintiff can establish this burden, the Defendants' interest in reducing disruption to MWVCOG's working environment, outweighs the Plaintiff's interest in her speech.

### 1. Plaintiff's T-Shirt Was Not Protected Speech and Therefore Plaintiff's First Amendment Retaliation Claims Fail as a Matter of Law.

Plaintiff's burden is to establish that she engaged in protected speech. Plaintiff demonstrates a claim of engaging in protected speech if "(1) [s]he spoke 'on a matter of public concern,' *and* (2) that [s]he 'spoke as a private citizen' rather than as a 'public employee.'" *Burch*, 146 F.4th at 833 (quoting *Dodge*, 56 F.4th at 777) (emphasis in original). Plaintiff must demonstrate both elements to demonstrate that her speech – her wearing of the t-shirt – was protected speech. Plaintiff has not demonstrated that her speech was protected speech under the *Pickering* analysis. If Plaintiff's speech was not on a matter of public concern, "the employee has

Page 4 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

no First Amendment cause of action based on the employer's reaction to the speech. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)).

**a)**    **Plaintiff's T-Shirt Was Not on a Matter of Public Concern.**

Plaintiff's t-shirt did not address a matter of public concern and as a result is not protected speech under the *Pickering* balancing test. What constitutes speech on a matter of public concern is "based on the 'content, form, and context of a given statement, as revealed by the whole record[.]'" *Dodge*, 56 F.4th at 777 (quoting *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 422 (9th Cir. 1995)). Neither the content, nor form, nor context of a statement are dispositive, but "'content is the most important.'" *Id.* (quoting *Thomas*, 379 F.3d at 810). Further, when a government employee's speech is of "'*no* relevance to the public's evaluation of the performance of governmental agencies' that speech of government employees receives no protection under the First Amendment." *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 978 (9th Cir. 2002) (quoting *Pool v. VanRheen*, 297 F.3d 899, 907 (9th Cir. 2002)) (emphasis in original).

The content of Plaintiff's t-shirt was irrelevant to the public's evaluation of MWVCOG. Speech that "addresses 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government,' it 'falls squarely within the boundaries of public concern.'" *Id.* (quoting *Weeks v. Bayer*, 246 F.3d 1231, 1234 (9th Cir. 2001)). For example, the speech at issue in *Ulrich* was related to "the layoff of physicians" which "touched on the ability of the hospital to care adequately for patients, sparking debate about whether there were less harmful ways to address the hospital's budgetary problems." *Id.* Plaintiff's speech here, her t-shirt, does not inform the public about the operations of MWVCOG or provide the public with any additional information to make any informed decisions about MWVCOG. For these reasons, the content of Plaintiff's speech indicates that it was not a matter of public concern.

An analysis of the form of Plaintiff's t-shirt demonstrates that to communicate anything to the wider community. The form of speech focuses on the "'*point* of the speech[.]'" *Id.* at 979 (quoting *Chateaubriand v. Gaspard,* 97 F.3d 1218, 1223 (9th Cir. 1996)) (emphasis in original). For example, posting on a social media site indicates an intent to communicate to the wider public. *Hernandez v. City of Phoenix*, 43 F.4th 966, 978 (9th Cir. 2022) (citing *Liverman v. City of Petersburg*, 844 F.3d 400, 410 (4th Cir. 2016)). Plaintiff wore her t-shirt just to work which does not indicate an intent to communicate with the wider public. (Compl. ¶ 18). Put differently, the form of Plaintiff's speech – wearing the t-shirt only to work – indicates that the Plaintiff did not mean to convey any message to the public wearing the t-shirt. The point of her speech was not to inform the wider public but rather to make some kind of statement, just to her work colleagues.

The context of Plaintiff's t-shirt indicates that she was not speaking on matter of public concern. The Plaintiff's "'motivation and the audience chosen for the speech'" are indicators of the context of the Plaintiff's speech. *Ulrich*, 308 F.3d at 979 (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999)). Plaintiff's Complaint does not indicate a particular motive of Plaintiff in wearing a t-shirt with a racial slur on it. Additionally, as discussed above, Plaintiff's chosen audience was not the public, rather it was her work colleagues. The context of Plaintiff's speech does not indicate that Plaintiff was speaking on a matter of public concern.

Finally, even if the content, form, and context indicate that Plaintiff's speech was on a matter of public concern, because it was not relevant to the public's evaluation of MWVCOG, her speech is not entitled to protection under the First Amendment. *Id.* at 978 (quoting *Pool*, 297 F.3d at 907. There is nothing about Plaintiff's t-shirt that would inform the public about how MWVCOG was performing its duties.

Page 6 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Putting together the content, form, and context of Plaintiff's t-shirt wearing does not indicate that Plaintiff sought to speak on a matter of public concern. Rather her speech was limited to her work colleagues and did not inform the public about MWVCOG's' job performance. For these reasons, Plaintiff's speech was not a matter of public concern and is not protected by the First Amendment and she has no cause of action under the First Amendment.

        **b)**        **Plaintiff's Speech Was Made as a Public Employee and as a Result Her Speech is Not Protected Speech Under the *Pickering* Balancing Test.**

Plaintiff's speech was made while she was working as a public employee and therefore her speech was not protected speech under the *Pickering* balancing test. A plaintiff speaks as a private citizen when they have "'no official duty' to make the questioned statements, or if the speech was not the product of 'perform[ing] the tasks [she] was paid to perform.'" *Dodge*, 56 F.4th at 778 (quoting *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008)). The pertinent legal inquiry is whether Plaintiff's "speech owes its existence to [her] position, or whether [s]he spoke just as any non-employee citizen could have." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 967 (9th Cir. 2011). When the speech "'owes its existence to a public employee's professional responsibilities' [the speech] is unprotected." *Burch*, 146 F.4th at 835 (quoting *Ceballos*, 547 U.S. at 421–22). When undertaking this review, "courts are not to rely mechanically on formal or written job descriptions, which 'often bear little resemblance to the duties an employee actually is expected to perform[,]'" rather the proper inquiry is a "'practical one.'" *Poway Unified Sch. Dist.*, 658 F.3d at 966 (quoting *Ceballos*, 547 U.S. at 424–45).

Here, Plaintiff's speech was made while she was acting as a public employee and owes its existence to that role and therefore is unprotected. When an employee goes "to work and perform[s] the tasks [s]he was paid to perform, [she] act[s] as a government employee." *Ceballos*, 547 U.S. at 422. Plaintiff wore her t-shirt displaying a racial slur to work. (Compl. ¶ 18). Plaintiff

Page 7 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

does not allege facts that suggest there was something non-routine about the day, rather it appears to have been any other day where Plaintiff was at work performing the tasks she was paid to perform. (*See generally* Compl.). There is no allegation that Plaintiff was not at work performing the tasks she was paid to perform while wearing this t-shirt. Moreover, it appears unlikely that Plaintiff would have worn the t-shirt outside of her job which, in part, involved organizing Ruby Bridges Walk to School Days. (Compl. ¶ 14). The result is that Plaintiff was speaking as a public employee and her speech was not entitled to the protections of the First Amendment. Because the speech was made as a public employee, Plaintiff's speech was not protected speech under the *Pickering* balancing test. Because Plaintiff has failed to state ultimate facts in her Complaint that establish her burden under the *Pickering* balancing test, the Court must dismiss the Complaint as a matter of law.

> **2.    Under the *Pickering* Balancing Test, Defendants' Interest in an Efficient Workplace Outweighs Plaintiff's First Amendment Interest in Wearing a T-Shirt with a Racial Slur on it.**

Even if the court concludes that the Plaintiff has met her burden under the *Pickering* balancing test, the Court still must dismiss Plaintiff's claims because the Defendants' interests in maintaining a productive and efficient workplace outweigh Plaintiff's interest in wearing a t-shirt with a racist slur on it to work.

At step two of the *Pickering* balancing test, Defendants must demonstrate that their interest in an efficient and inclusive workplace outweighs Plaintiff's First Amendment interests. *Thompson v. Central Valley Sch. Dist. No 365*, 163 F.4th 654, 661–62 (9th Cir. 2025) (citing *Riley's American Heritage Farms*, 32 F.4th at 721).

/ / /

/ / /

Page 8 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

a)      **The Defendants' Termination of Plaintiff was in the Legitimate Administrative Interest of Avoiding Workplace Disruption.**

Even if Plaintiff can make the prima facie case of First Amendment retaliation, her claims still fail because the Defendants have "'legitimate administrative interests in promoting efficient service-delivery and avoiding workplace disruption' [that] outweigh the plaintiff's First Amendment interests." *Damiano*, 140 F.4th at 1137 (quoting *Riley's American Heritage Farm*, 32 F.4th at 721). "Under the *Pickering* balancing test, the ultimate question is whether the government's legitimate administrative interests outweigh the employee's right to engage in the expressive activity at issue." *Id.* at 1138 (citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 677 (1996)).

Plaintiff's wearing of the t-shirt with a racial slur on it caused actual, material, and substantial disruption. For an employer's actions to trump an employee's freedom of expression, Defendants must "'demonstrate actual, material and substantial disruption, or reasonable predictions of disruption in the workplace.'" *Id.* (quoting *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009)). The size and number of complaints are material to the *Pickering* balancing test, but there is no minimum number that determines whether the number of complaints was material or substantial. *Id.* at 1144 (citing *Riley's American Heritage Farm*, 32 F.4th at 725–26; and then citing *Myers*, 461 U.S. at 150).

Here, Plaintiff's wearing of the t-shirt caused actual disruption – there were at least three complaints filed about Plaintiff's wearing of the t-shirt. (Compl. ¶ 28). This was very disruptive to an employer made up of public bodies throughout Marion, Polk and Yamhill counties. (*Id.* ¶ 7).

Plaintiff being in a public contact role as the Safe Routes to School Coordinator of the MWVCOG heightens the Defendants' interest in avoiding disruption. (*Id.* ¶ 13). A governmental

Page 9 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

body's interest "in 'avoiding disruption is magnified when the employee asserting [a First Amendment] right serves in a confidential, policymaking, or public contact role.'" *Thompson*, 163 F.4th at 666 (9th Cir. 2025) (quoting *Moran v. State of Washington*, 147 F.3d 839, 846 (9th Cir. 1998)) (brackets in original). Moreover, the "'extent of an employee's authority and interactions with the public also bears on the degree of government interest in preventing disruption.'" *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 392 (1987)).

Here, Plaintiff served in a public contact role. Plaintiff worked with local schools to develop Ruby Bridges Walk to School Day events and worked with a state senator to pass a bill recognizing Ruby Bridges Walk to School Day. (Compl. ¶¶ 14–15). Plaintiff's role also involved "community outreach, public education, and equity focused programming." (*Id.* ¶ 13). Clearly, Plaintiff's role is one that interacts with the public. Such role being public facing magnifies Defendants' interests in preventing disruption by an employee in such role. By way of example, the Ninth Circuit held that it was entirely within a school district's interest to discipline a public facing assistant principal for using slurs on his personal Facebook account. *Thompson*, 163 F.4th at 667. What Plaintiff did here was more acute. By wearing a racial slur at work, Plaintiff caused more than the speculative disruption in *Thompson*, her t-shirt caused actual and substantial disruption. *Id.* at 665–66.

Put together, MWVCOG had a strong interest in preventing disruption of its operations. This was magnified by the fact the disrupter – Plaintiff – served in a public contact role, which heighted the Defendants' interest in preventing disruption.

> **b)    Plaintiff's First Amendment Interests in Wearing a T-Shirt with a Racial Slur is Low.**

Plaintiff's First Amendment interests in wearing a t-shirt with a racial slur on it are low because her speech was derogatory in nature. Speech that uses slurs is "not speech entitled to the

highest constitutional protection." *Id.* at 665 (citing *Hernandez*, 43 F.4th at 979 and *Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 345 (4th Cir. 2017)). Speech that is based on a "specialized knowledge" of a governmental body may be entitled to additional protection when it touches on a matter of a public concern. *Id.* (citing *Damiano*, 140 F.4th at 1140).

Here, Plaintiff's speech was speech that used a racist slur. (Compl. ¶ 18). Speech, even when on a matter of public concern – which Plaintiff's was not – is not "entitled to the highest constitutional protection." *Thompson*, 163 F.4th at 665 (citing *Hernandez*, 43 F.4th at 979 and *Grutzmacher*, 851 F.3d at 345). Nor was Plaintiff's speech grounded in any specialized knowledge about the Mid-Willamette Valley Council of Governments that was meant to communicate something about the organization, also lowering Plaintiff's interest in the speech being made. Because Plaintiff's speech was derogatory in nature and not based on specialized knowledge, Plaintiff's First Amendment interest in the speech under *Pickering* is low.

> **3.    The *Pickering* Balancing Test Weighs in Favor of Defendants Because the Interest in Creating an Efficient Work Environment Outweighs Plaintiff's Interest in Wearing a T-Shirt With a Racial Slur on it.**

When weighing the value of a public employee's speech against the importance of maintaining an efficient work environment, such balancing is done by employing "a 'sliding scale' in which the state's burden to justify a particular discharge or adverse employment action 'varies depending upon the nature of the employee's expression.'" *Id.* at 665 (quoting *Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 905–06 (9th Cir. 2021)). The *Pickering* balancing test additionally "'recognizes that a government employer has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.'" *Id.* (quoting *Moser*, 984 F.3d at 906). Finally, a public body's interest in restricting speech is "magnified when the employee

Page 11 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

asserting the right serves in a 'confidential, policymaking, or public contact role.'" *Moran*, 147 F.3d at 846 (quoting *Rankin*, 483 U.S. at 390–91).

As discussed above, Defendants have a high interest in preventing disruption. Defendants additionally have a high interest in preventing disruption from public contact employees. Plaintiff's speech was made in her role as a public contact employee and caused disruption and therefore the Defendants' interests are extremely high.

Plaintiff's interest in her speech is low and not entitled to the highest level of constitutional protection. First, an employee's speech that is not on a matter of public concern is not of a high interest. Second, an employee's speech that is not based on specialized knowledge of a government is not of a high interest. Finally, even speech that is of a public concern – which Plaintiff's speech was not – speech that uses a racial slur is not entitled to the highest level of protection under the Constitution.

Balancing the interests of Defendants in preventing disruption and the Plaintiff's interest in her speech clearly weighs in favor of the Defendants. Defendants' interest in preventing disruption by a public contact employee is extremely high. Plaintiff's interest in speech that uses a racial slur and is not on a matter of public concern is extremely low. Therefore, the Defendants' interest clearly outweighs the Plaintiff's interest in her speech.

Therefore, under the *Pickering* balancing test, Plaintiff's claim fails as a matter of law. For this reason, the Court must dismiss the Plaintiff's first cause of action under Section 1983 as against Carmichael and MWVCOG.

    **B.**    **The First Amendment Retaliation Claim Brought Under Section 1983 Must be Dismissed Against Defendant Carmichael Because Carmicheal is Entitled to Qualified Immunity.**

Plaintiff's First Claim for Relief asserts a First Amendment Violation and is barred as against Carmichael by qualified immunity. Qualified immunity protects government officials

Page 12 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

"from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565, (1978) and *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). The purpose of qualified immunity is to provide to public officials, "breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity serves as "an *immunity from suit* rather than a mere defense to liability[.]'" *Mithcell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). The protections of qualified immunity are "'effectively lost if a case is erroneously permitted to go to trial.'" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (quoting *Mitchell*, 472 U.S. at 526). A defendant may raise qualified immunity at the motion to dismiss stage and under Rule 12(b)(6) when the Court "'can determine, based on the complaint itself, that qualified immunity applies.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (collecting cases).

A government employee is entitled to qualified immunity "'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (quoting *Waid v. Cnty. of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023)). If either of these conditions is not met, then the government official is immune from suit. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Courts may use the constitutional analysis under *Pickering* to determine if a constitutional right was violated. *See*

Page 13 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

*Thompson*, 163 F.4th at 667. As discussed above, the right to wear a t-shirt with the n-word on it to work at a public employer is not a constitutional right and therefore it was not violated.

Even if this Court is to decide, or to take no side into whether such a right to wear a racial slur to work exists, such right was not clearly established in November 2025.

For a constitutional right to have been clearly established at the time, the right and its contours must be "'sufficiently clear'" so that a "'reasonable official'" would have understood that their action would have violated that right. *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To meet this high bar, the "existing precedent" on the right asserted "must have placed the . . . constitutional question beyond debate." *Id.* (citing *Anderson*, 482 U.S. at 640. Put another way, the right must be "settled law" and the law  must "clearly prohibit the officer's conduct in the particular circumstances before [her.]" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Saucier*, 553 U.S. at 202).

Whether a right has been clearly established is a question of law "for the court to decide." *Gordon*, 6 F.4th at 968 (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)). The Plaintiff has the burden of demonstrating that their right that they alleged was violated was clearly established. *Id.* at 969.

The right to be defined must be defined particularly, and not at "'a high level of generality.'" *City and Cnty. of San Francsico v. Sheehan*, 575 U.S. 600, 613 (2015) (quoting *al-Kidd*, 563 U.S. at 742). To be specific, the "dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *al-Kidd*, 563 U.S. at 742) (emphasis in original). Therefore, the clearly established right "must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson*, 483 U.S. at 640)).

Here, Plaintiff alleges that she was terminated "for displaying a truthful depiction of racial hostility, [and that] Defendants imposed an unconstitutional orthodoxy requiring the sanitization of civil-rights history." (Compl. ¶ 32). Plaintiff has not described her right with particularity, nor has she demonstrated that the right was clearly established, and for those reasons, Carmichael is entitled to qualified immunity.

Plaintiff's description of her First Amendment right that has been violated is too general and not particularized to the facts of her case. Plaintiff describes her right as "displaying a truthful depiction of racial hostility, . . . ." (*Id.* at ¶ 32). This cannot be how Plaintiff's right is described because the qualified immunity analysis requires "that "[b]road rights must be particularized before they are subjected to the clearly established test[.]'" *Moran*, 147 F.3d at 845 (quoting *Kelley v. Borg,* 60 F.3d 664, 667 (9th Cir. 1995)). In the First Amendment context, the rights as described by the courts are far more specific. *See e.g.*, *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1020 (9th Cir. 2020) ("It was clearly established at the time of Defendants' conduct that the First Amendment prohibits public officials from threatening to remove a child from an individual's custody to chill protected speech out of retaliatory animus for such speech."); *Dodge* 56 F.4th at 784 (holding it was clearly established that "is patently unreasonable for a school official to believe that she could lawfully threaten a subordinate's employment because he brought a political campaign hat to teacher-only trainings after several teachers complained about the political messaging they attributed to the hat."). Plaintiff's framing of the right is far too broad and would essentially allow a public employee to wear whatever they desire to work so long as it was rooted in the "displaying a truthful depiction of racial hostility," which is incredibly broad and would result in absurd consequences. (Compl. ¶ 32). To more specifically fit the analysis, the Court must define the right as: whether a public

Page 15 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

employee has the right to wear a t-shirt with a racial slur on it to work. Such a right is not clearly established.

Plaintiff cannot cite to, nor has she, to any "robust 'consensus of persuasive authority'" that demonstrates that such a right to wear a racial slur to work existed in November of 2025. *Wesby*, 583 U.S. at 63 (quoting *al-Kidd*, 564 U.S. at 741–42). There appears to be no case law directly on point in the Ninth Circuit about the ability to wear or say the n-word to work at a public employer. What the Ninth Circuit has said, is that it was not a constitutional violation for a school district to take an adverse action against a school administrator who used "disability-related slurs like 'demtard' and . . . violent language" on his personal Facebook. *Thompson*, 163 F.4th at 664. More to the point, the Seventh Circuit held that a school teacher's use of the n-word in front of students was not constitutionally protected under the First Amendment when he was suspended because it was used in the context of his job as a public school teacher. *Brown v. Chicago Bd. of Educ.*, 824 F.3d 713, 714–15 (7th Cir. 2016). Additional case law states that "[n]othing in the Constitution prohibits the states from insisting that certain modes of expression are inappropriate and subject to sanctions." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 683 (1986). In *Bethel*, the Supreme Court held that it was proper that a school district could sanction "offensively lewd and indecent speech" because it "undermine[d] the school's basic educational mission." *Id.* at 685. Likewise, it is in the interest of MWVCOG to limit speech that is "highly offensive and demeaning" and could impair the mission of the MWVCOG. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004) ("It is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination."). Additionally, a "public employer may, consistently with the First Amendment, prohibit its employees from being 'rude to customers,'" and there is no argument

that the n-word would be rude to the people MWVCOG serves. *Waters v. Churchill*, 511 U.S. 661, 673 (1994). In total, the case law does not support the existence of such right to wear a t-shirt with the n-word to one's job at a public employer and if anything it states the opposite – that such right does not exist under the First Amendment.

Cleary, the case law does not demonstrate that the question of whether a public employee may wear a t-shirt with the n-word on it is supported by a "robust 'consensus'" of case law or other authority that has clearly established such a right. *Wesby*, 583 U.S. at 63 (quoting *al-Kidd*, 564 U.S. at 741–42). Nor is it sufficiently clear that such a right exists. There is no showing that qualified immunity should not apply to Carmichael by a constitutional violation and that such right was clearly established

At the very least, the case law has not placed the precedent "beyond debate" as required to demonstrate that such a right exists. *al-Kidd,* 563 U.S. at 741. Therefore, the Court must dismiss Plaintiff's first Claim for relief against Carmichael with prejudice based on qualified immunity.

      **C.**        **The Section 1983 Claim Made Against MWVCOG Must Be Dismissed Because Liability Under Section 1983 Does Not Attach Under the Theory Of *Respondeat Superior* Nor Did Liability Attach Because MWVCOG Did Not Adopt Carmichael's Actions.**

            **1.**       ***Respondeat Superior* Does Not Apply to Section 1983 Claims Generally and Thus the Claim Against the Council Must Be Dismissed as a Matter of Law.**

*Respondeat superior* does not apply in Section 1983 actions and therefore, the Section 1983 claims against MWVCOG must be dismissed. *Collins v. City of San Diego*, 841 F.2d 337, 342 (9th Cir. 1988) ("*respondeat superior* does not apply in a section 1983 case."); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (under § 1983, local governments are "not vicariously liable" for their employees' actions). The Complaint alleges that MWVCOG, through Carmichael, terminated Plaintiff's employment, thus alleging liability under a theory of respondent superior.

Page 17 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

(Compl. ¶ 28) ("Defendant Carmichael terminated Plaintiff's employment, alleging that three people had complained about the t-shirt."). As a result, Plaintiff's Section 1983 claim against MWVCOG must be dismissed as a matter of law.

### 2. Plaintiff has Failed to Establish Liability Against MWVCOG Under Section 1983.

There are three limited exceptions to the general rule that local governments cannot be liable for claims under Section 1983 allegedly perpetrated by their employee and the Plaintiff has not pled nor established that any apply to this case. First, a plaintiff may establish a Section 1983 claim if the alleged constitutional violation was undertaken "pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.'" *Gillette v. Delmore*, 979 F.2d 1342, 1346 (quoting *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 737 (1992)). Second, a plaintiff may establish liability if the person who allegedly committed the tort was "an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). Third, a plaintiff may establish this claim if an "official policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1346–47 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). The Complaint makes no allegations under any of these three theories that MWVCOG is liable for Carmichael's allegedly unconstitutional conduct.

Plaintiff has not alleged that she was terminated under a longstanding practice or custom of the MWVCOG. A plaintiff may establish liability for a local government under Section 1983 if the alleged unconstitutional conduct was conducted under a "'longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.'" *Id.* at 1346 (1992) (quoting *Jett*, 491 U.S. at 737). Here, there is no longstanding practice or custom that relates

Page 18 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

to the termination of employees for what they wear or for wearing "political, historical, or expressive imagery on clothing." (Compl. ¶ 21). This much is admitted by the Plaintiff. (Compl. ¶ 21). Because Plaintiff has failed to allege that she was terminated under a longstanding practice or custom liability against MWVCOG has not attached and the Section 1983 claim against MWVCOG must be dismissed as a matter of law.

Plaintiff has not alleged that Carmichael is a decisionmaker with final authority related to the Council's employment policy. Liability under Section 1983 only attaches under this theory if "'the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that "'a particular official—even a policy-making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.'" *Gillette*, 979 F.2d at 1349. For example, the Supreme Court in *Pembaur*, noted that even if an employee has hiring and firing duties, that does not create liability if that person does not also have the authority to set that public body's employment policy. 475 U.S. at 483 n.12 (1986). Such a division exists at MWVCOG. Carmichael, as executive director of the Council, has discretion to terminate employees, but Carmichael does not set the employment policies of the District – that policy making authority rests with the Board of the Council. O.R.S. § 190.080(1)(c) (a Board of an intergovernmental entity may "[a]dopt all rules necessary to carry out its powers and duties under the intergovernmental agreement.").[1] Because Carmichael made

---

[1] Defendants respectfully request that the court take judicial notice of the fact that public bodies that created MWVCOG have granted MWVCOG with these powers. At the motion to dismiss stage, a court "may take judicial notice of matters of public records outside the pleadings." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (citing *Mack v. South Bay Beer Distributors*, 798 F.2d 1279 (9th Cir. 1986)). This exception "applies to undisputed matters of public record[.]" *Suultaaq, Inc. v. Williams*, 782 F.Supp.2d 795, 806 (D. Alaska 2010) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)). The agreement that has vested these powers to MWVCOG is a matter of public record and is undisputed in its existence and its terms. *See* Agreement of the Mid-Willamette Valley Council of Governments, Art. VIII, § 8 (amend. March 17, 1999), https://www.mwvcog.org/media/136 ("The Council shall have the power: . . . To exercise any and all powers and functions authorized by law for an intergovernmental entity, including the powers conferred by ORS 190.080.").

Page 19 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

the decision to terminate Plaintiff, but lacks ultimate policy making authority, liability does not attach to the MWVCOG and the Plaintiff's Section 1983 against the MWVCOG must be dismissed.

Plaintiff has not alleged that the Council has ratified Carmichael's conduct in terminating her. Liability under Section 1983 may attach if an "official policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346–47 (citing *Praprotnik*, 485 U.S. at 127). Here, Plaintiff makes no such allegation. The Board of the MWVCOG never voted to adopt or approve Plaintiff's termination. As discussed above, it is the Board of MWVCOG that exercises the ultimate policy-making authority of the Council. O.R.S. § 190.080(1)(c). Because the Board never took actions to ratify, and nor does Plaintiff allege such ratification took place, Plaintiff's Section 1983 claim must be dismissed.

Plaintiff has failed to allege that liability for the alleged unconstitutional actions attached to MWVCOG. For this reason, Plaintiff's Section 1983 claims against MWVCOG must be dismissed.

> **D.    The Court Must, as a Matter of Law, Dismiss Plaintiff's Claim for Wrongful Discharge Because Oregon Law Provides an Adequate Remedy for Plaintiff's Wrongful Discharge Claim.**

Wrongful discharge is an interstitial tort that can only be invoked when no other claim provides a plaintiff with adequate relief. *Walker v. Oregon Travel Information Council*, 367 Or. 761, 484 P.3d 1035, 1045 (2021) (en banc) ("common law wrongful discharge is an interstitial tort: The tort may only be invoked when another claim does not provide a plaintiff with an adequate remedy[]") (citing *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 563 P.2d 1205, 1209 (1977)).

In this case, Plaintiff has asserted a statutory claim which may afford Plaintiff with adequate relief: O.R.S. § 659A.030. Complaint ¶¶ 48–50. Plaintiff, if successful on Plaintiff's

Page 20 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

O.R.S. § 659A.030 claim, may recover compensatory damages, punitive damages, attorney fees, injunctive relief, and equitable relief, including, but not limited to, reinstatement and backpay. O.R.S. §§ 659A.885(1)–(3). O.R.S. § 659A.030 provides adequate relief to preempt a claim of wrongful termination. *See Arnold v. Pfizer, Inc.*, 970 F.Supp.2d 1106, 1146 (D. Or. 2013) (citing *Battan v. Allwest Underground, Inc.*, No. 08-CV-707-BR, 2008 WL 4191467, at *6 (D. Or. Sept. 5, 2008)). As a result, Plaintiff's common law wrongful discharge claim must be dismissed against the Defendants as a matter of law because of Plaintiff's adequate remedies provided under O.R.S. § 659A.885. *See Arnold*, 970 F.Supp.2d at 1146; *see also Farrimond v. Louisiana-Pacific Corp.*, 103 Or. App. 563, 798 P.2d 697, 699 (1990) (a statutory remedy is exclusive when the legislature adopts "virtually all remedies that would have been available at common law . . . .").

> **E.      Plaintiff's Claims Based on the Oregon Constitution Must be Dismissed as a Matter of Law Because No Private Cause of Action Exists Solely Under the Oregon Constitution for Damages.**

A plaintiff cannot bring a claim under Article I, section 8 of the Oregon Constitution because no cause of action for damages exists solely under the Oregon Constitution. A plaintiff whose rights "under Article I, section 8, of the Oregon Constitution are violated by a municipality or its employes [sic] may not bring an action for damages against the municipality or its employes [sic] directly under the constitution, but will be limited to existing common-law, equitable, and statutory remedies." *Hunter v. City of Eugene*, 309 Or. 298, 304, 787 P.2d 881 (1990). This is because Oregon law does not have an analog to Section 1983 and "Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations." *Id.* at 303. The "appropriate remedy for constitutional violations by public bodies, officers, employees, and agents is the Oregon Tort Claims Act, ORS 30.260–30.300." *Juran v. Independence Or. Cent. Sch. Dist. 13J*, 898 F.Supp. 729, 730 (D. Or. 1995) (citing *Nelson v. Lane Cnty.*, 304 Or. 97, 107, 743 P.2d 692 (1987)).

Page 21 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Here, Plaintiff's Second Claim for Relief is brought solely under the Oregon Constitution, and particularly Article I, section 8 of the Oregon Constitution. (Compl. ¶ 42). Plaintiff has not alleged a claim under the Oregon Tort Claims Act. Plaintiff's claim for damages under the Oregon Constitution is brought solely under the Oregon Constitution and has provided no other grounds for relief. (Compl. ¶¶ 42–47). Plaintiff's Complaint seeks monetary relief which is unavailable under a claim solely made under the Oregon Constitution. (*See* Compl. Prayer for Relief). Because of this, Plaintiff has failed to state a claim for which relief can be granted under the Oregon Constitution.

For these reasons, Plaintiff has failed to state a claim under the Oregon Constitution for which relief can be granted, and the Court must dismiss the claims against the Defendants for violations of the Oregon Constitution.

### F.    Plaintiff's Statutory Retaliation Claim Fails as a Matter of Law Because Plaintiff Did Not Engage in a Protected Activity.

To state a claim for retaliation under O.R.S. § 659A.030, a plaintiff must allege facts sufficient to demonstrate that: (1) she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the protected activity and the adverse employment action. *Medina v. State*, 278 Or. App. 579, 377 P.3d 626, 631 (2016) (citing *PSU Association of University Professors v. PSU*, 352 Or. 697, 291 P.3d 658, 665 (2012)).

Plaintiff's claims fail as a matter of law because she has not alleged that she engaged in a protected activity which is the first required element to state a claim under ORS § 659A.030. A protected activity may be "oppos[ing] an unlawful practice," or it may be "fil[ing] a complaint" regarding discrimination. O.R.S. § 659A.030(1)(g). Or more broadly, a "protected activity must have some intended connection to the purpose of the statute—that is, it must be an activity linked

to defending, in some manner, the rights afforded in ORS chapter 659A." *Cuddigan-Placito v. State Accident Insurance Fund*, 335 Or. App. 663, 560 P.3d 715, 723–24 (2024).

Plaintiff, at no point in her complaint, alleges facts that support that she opposed an unlawful practice. For an employee's statement to be "'opposed to an unlawful employment practice'" it must refer to "'*some* practice by the employer that is allegedly unlawful.'" *Id.* (quoting *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983)) (emphasis in original). Here, Plaintiff's only statement at issue is her wearing of the t-shirt with the Norman-Rockwell painting. (Compl. ¶ 18). The statement of wearing the t-shirt was not aimed at, nor does it indicate, that Plaintiff was opposing an illegal employment practice of Carmichael or MWVCOG. Nor is it alleged that the t-shirt's intent was to call out an illegal practice of Carmichael or MWVCOG, rather it was to "convey[] themes historically associated with Rockwell's work, including American life, civic values, and social reflection, and political life." (Compl. ¶ 19). In other words, the only statement in the Complaint makes it clear that the t-shirt was not directed at an illegal practice of MWVCOG and therefore, that statement was not a protected activity under O.R.S. § 659A.030 because it does not refer to alleged illegal practice of or occurring at MWVCOG.

Plaintiff at no point filed a complaint regarding discriminatory actions while employed at MWVCOG. A protected activity under O.R.S. § 659A.030 includes filing a "complaint . . . in response to an employer's unlawful employment practice under ORS chapter 659A[.]" *PSU Association of University Professors*, 291 P.3d at 664. Here, Plaintiff makes no allegation that she filed a complaint against MWVCOG for violations of O.R.S. § 659A or any other anti-discrimination law while employed with MWVCOG. (*See generally* Compl.). Therefore, Plaintiff has not alleged to engaging in the protected activity of filing a complaint while employed with MWVCOG.

Page 23 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Plaintiff did not engage in any protected activities either by opposing an unlawful practice by MWVCOG nor filing a complaint regarding O.R.S. § 659A by wearing her Norman Rockwell t-shirt and as a result, Plaintiff's retaliation claim under O.R.S. § 659A.030 fails as a matter of law. Therefore, the Court must dismiss Plaintiff's claims of unlawful retaliation and discrimination under ORS § 659A.030 against both Carmichael and MWVCOG.

**G.      Plaintiff's Statutory Claim of Discrimination Because of Association Fails as a Matter of Law Because Plaintiff did Not Associate with a Protected Class, Nor Was Her Termination a Result of Any Association with a Protected Class.**

Plaintiff has not alleged facts sufficient to state a claim of discrimination under O.R.S. § 659A.030. Under Oregon law, in order to state a claim of discrimination because of association with a protected class, a plaintiff must demonstrate: "(1) [her] association with members of a protected class; (2) that [s]he was qualified for his position or was performing according to [her] employer's legitimate expectations; (3) [s]he suffered an adverse employment action; and (4) similarly situated individuals outside of the protected class were treated more favorably." *Pitts v. G4S Secure Solutions (USA) Inc.*, No. 3:20-cv-00074-AC, 2020 WL 6333959, at *3 (D. Or. May 26, 2020) (citing *Tornabene v. Nw. Permanente, P.C.*, 156 F.Supp.3d 1234, 1242 (D. Or. 2015) and then citing *Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir. 2008)). O.R.S. § 659A.030(1)(b) protects an employee from discrimination because of their "open association with members of a protected class. . . . so long as Plaintiff establishes a causal connection between [her] association with members of a protected class and an adverse employment action." *Id.* (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 513 (6th Cir. 2009). The Plaintiff must offer "proof that [s]he was discriminated against and the reason for that discrimination was [her] association with members of a protected class." *Id.* (citing *Barrett*, 556 F.3d at 513). Plaintiff has not alleged an association with a protected class, nor has she alleged she was terminated based on an association with a protected class.

Page 24 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

### 1.    Plaintiff's Claim for Discrimination Because of Association Fails Because She Has Not Alleged an Association with a Protected Class.

The only allegation that suggests a connection with a protected class is a recitation of the cause of action and not a factual statement. A plaintiff must allege more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). Here, the only allegation Plaintiff offers in support of her association with a protected class is "Defendants terminated Plaintiff because . . . of her association with and advocacy for protected classes." (Compl. ¶ 49). This is nothing more than a recitation of the elements of the cause of action of discrimination because of association. *See Pitts*, 2020 WL 6333959, at *3 ("The key inquiry is whether Plaintiff offers proof that he was discriminated against and the reason for that discrimination was [her] association with members of a protected class.") (citing *Barrett*, 556 F.3d at 513).

Plaintiff's Complaint does not contain references to what particular associations Plaintiff had with members of a protected class, which is fatal to her claim. A Plaintiff must "explain[] the nature of [her] association" with members of a protected class. *Pitts*, 2020 WL 6333959, at *4. The Complaint is devoid of any facts that indicate that she even interacted with any members of a protected class. For example, in *Pitts*, the plaintiff alleged "he assisted Hispanic security officers in filing various types of employment complaints," but this did not explain "the nature of his relationship" with the Hispanic security officers. *Id.* These allegations in *Pitts* were "insufficient under *Twombly* and *Iqbal*." *Id.* at *5. Here, Plaintiff does even less to explain her relationship with a protected class – her complaint is devoid of any facts alleging an association with any protected class. For failing to state facts that demonstrate a relationship to a protected class, Plaintiff's claims under O.R.S. § 659A.030 for discrimination based on association fail as a matter of law.

Page 25 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**2.    Plaintiff's Claim for Discrimination Because of Association Fails Because She Has Not Alleged Her Termination Was Due to an Association with a Protected Class.**

Even if the Court concludes that Plaintiff associated with a protected class, Plaintiff's claim still fails as a matter of law because her termination was not because of "[her] association with members of a protected class." *Id.* at *3 Plaintiff has not alleged any facts to support that her association with a protected class was the reason for her termination. In fact, Plaintiff admits that her termination was not because of an association with a protected class – rather it was because of people complaining about her t-shirt with a racist slur on it. (Compl. ¶ 28). For failing to state facts that demonstrate that Plaintiff's termination was because of her association with a protected class, Plaintiff's claims under O.R.S. § 659A.030 for discrimination based on association fails as a matter of law. Therefore, the Court must dismiss Plaintiff's claims of unlawful retaliation and discrimination under O.R.S. § 659A.030 against both Carmichael and MWVCOG.

## IV.    CONCLUSION

For the forgoing reasons, Defendants respectfully requests the Court to dismiss all claims asserted against Defendants.

DATED: March 6, 2026.

CABLE HUSTON LLP

By s/ Román D. Hernández
   Román D. Hernández, OSB No. 011730
   rhernandez@cablehuston.com
   Colin H. Milton, OSB No. 233800
   cmilton@cablehuston.com
   1455 SW Broadway, Suite 1500
   Portland, OR  97201

*Attorneys for Defendants*

Page 26 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

<u>**WORD COUNT CERTIFICATION**</u>

This brief complies with the applicable word count limitation under Local Civil Rule 7.1(c), because it contains 8,473 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature blocks, or required certificates.

DATED:  March 6, 2026.

CABLE HUSTON LLP


By s/ Román D. Hernández
    Román D. Hernández, OSB No. 011730
    rhernandez@cablehuston.com
    Colin H. Milton, OSB No. 233800
    cmilton@cablehuston.com
    1455 SW Broadway, Suite 1500
    Portland, OR  97201
    (503) 224-3092

    *Attorneys for Defendants*

Page 2 – DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS