**Lake Perriguey,** OSB No. 983213
*lake@law-works.com*
**LAW WORKS LLC**
1906 S.W. Madison Street, Ste 201
Portland, Oregon 97205
Telephone: (503) 227.1928
Facsimile: (503) 334.2340

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| **BETH SCHMIDT**, <br><br> an individual, <br><br>        Plaintiff, <br><br>        v. <br><br> **MID-WILLAMETTE VALLEY COUNCIL OF GOVERMENTS**, an Oregon public entity, and **McRAE CARMICHAEL**, in her individual and official capacities, <br><br>        Defendants | Case No. 6:26-cv-00002-AA <br><br><br> **PLAINTIFF'S RESPONSE TO DEFENDANTS FRCP 12(b)(6) MOTION TO DISMISS** |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................1

II. LEGAL STANDARD ........................................................................................2

    A. Rule 12(b)(6) – Allegations in the Complaint Presumed to be True ..................2

    B. Defendants' Motion Attempts to Rewrite the Case Law Rule..............................3

III. ARGUMENT.....................................................................................................5

    A. The Complaint Plausibly Alleges Speech on a Matter of Public Concern .........5

    B. The Complaint Does Not Establish as a Matter of Law That Plaintiff Spoke

       Pursuant to Official Duties .................................................................................7

    C. Pickering Balancing Cannot Be Resolved on the Face of the Complaint...........8

    D. Qualified Immunity Does Not Warrant Dismissal at the Pleading Stage.........10

    E. The Section 1983 Claim Against MWVCOG Is Plausibly Alleged .................11

    F. Plaintiff Withdraws Her State-Law Claims.......................................................12

IV. CONCLUSION................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ............................................................................................ 10
*Barone v. City of Springfield,*
  902 F.3d 1091 (9th Cir. 2018) ............................................................................ 12
*Boquist v. Courtney,*
  32 F.4th 764 (9th Cir. 2022) ................................................................................. 3
*Burch v. City of Chubbuck,*
  *146 F.4th 822 (9th Cir. 2025)* .............................................................................. 4
*Burgess v. Pierce Cty.,*
  918 F.2d 104 (9th Cir. 1990) .............................................................................. 10
*Chateaubriand v. Gaspard,*
  97 F.3d 1218 (9th Cir. 1996) ................................................................................ 8
*Connick v. Myers,*
  461 U.S. 138 (1983) .............................................................................................. 5
*Dahlia v. Rodriguez,*
  735 F.3d 1060 (9th Cir. 2013) .............................................................................. 3
*Damiano v. Grants Pass Sch. Dist. No. 7,*
  140 F.4th 1117 (9th Cir. 2025) ............................................................................. 9
*Daniels-Hall v. Nat'l Educ. Ass'n,*
  629 F.3d 992 (9th Cir. 2010) ................................................................................ 2
*Demers v. Austin,*
  746 F.3d 402 (9th Cir. 2014) ................................................................................ 8
*Dodge v. Evergreen School District #114,*
  56 F.4th 767 (9th Cir. 2022) .......................................................................Passim
Eng v. Cooley,
  552 F.3d 1062 (9th Cir. 2009) ..................................................................... 3, 8, 10
*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) .......................................................................................... 2, 5
*Hope v. Pelzer,*
  536 U.S. 730 (2002) ............................................................................................ 10
*Howard v. City of Coos Bay,*
  871 F.3d 1032 ........................................................................................................ 3
*Jensen v. Brown,*
  131 F.4th 677 (9th Cir. 2025) ............................................................................... 8
Keyser,
  265 F.3d ............................................................................................................... 10
*Lytle v. Carl,*
  382 F.3d 978 (9th Cir. 2004) .............................................................................. 12

*McKinley v. City of Eloy*,
  705 F.2d 1110 (9th Cir. 1983) ...................................................................................... 9

Miller v. Clark Cty. Sch. Dist.,
  182 F. App'x 673 (9th Cir. 2006) ................................................................................ 10

*Moser v. Las Vegas Metro. Police Dep't*,
  984 F.3d 900 (9th Cir. 2021) ...................................................................................... 8

*Nichols v. Dancer*,
  657 F.3d 929 (9th Cir. 2011) ...................................................................................... 9

*Nunez v. Davis*,
  169 F.3d 1222 (9th Cir. 1999) ........................................................................... 5, 10, 11

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ................................................................................................... 11

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) ................................................................................................... 12

*Pickering v. Board of Education*,
  391 U.S. 563 (1968) ..................................................................................................... 2

Posey v. Lake Pend Oreille Sch. Dist. No. 84,
  546 F.3d 1121 (9th Cir. 2008) ...................................................................................... 7

*Rankin v. McPherson*,
  483 U.S. 378 (1987) ..................................................................................................... 9

*Rigg v. California*,
  32 F. App'x 398 (9th Cir. 2002) ................................................................................. 10

*Rivero v. City & Cty. of San Francisco*,
  316 F.3d 857 (9th Cir. 2002) ...................................................................................... 10

*Robinson v. York*,
  566 F.3d 817 (9th Cir. 2009) .................................................................................... 5, 9

*Settlegoode v. Portland Pub. Sch.*,
  371 F.3d 503 (9th Cir. 2004) .................................................................................. 9, 10

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ...................................................................................... 2

Texas v. Johnson,
  491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) .............................................. 5

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ...................................................................................... 2

Statutes

42 U.S.C. § 1983 ............................................................................................... 5, 11, 12

Rules

FRCP 12(b)(6) ................................................................................................ 2-4, 11,13

**I. INTRODUCTION**

Defendants McRae Carmichael and the Mid-Willamette Valley Council of Governments ("MWVCOG") seek dismissal at the pleading stage of a case arising from Beth Schmidt's ("Plaintiff's) termination as a public employee after she wore to work a shirt reproducing the Norman Rockwell painting *The Problem We All Live With*—an iconic depiction of 6-year-old Ruby Bridges' walk, flanked by federal marshals, to a previously all-white public school and the racist hostility directed at her. The Complaint does not allege that Plaintiff used a racial slur toward anyone, endorsed racist language, threatened any person, or engaged in discriminatory conduct. It alleges instead that Plaintiff wore an anti-racist, historically accurate image in connection with contemporaneous civil-rights public education work and an imminent associated public event that Defendants themselves had authorized, praised, and promoted.

Defendants' motion fails at the outset because it poorly reframes Plaintiff's serious and context-specific claim as a supposed right to wear "a t-shirt with a racial slur on it to work." This reductive phrase is not what the Complaint alleges. The Complaint alleges that Plaintiff wore a canonical work of American civil-rights art in which offensive graffiti appears only as part of a historically accurate condemnation of racism directed at a six-year-old child. The Complaint includes an image of the famous work. The Complaint further alleges that the image was contextual, historical, and condemnatory of racism; that MWVCOG had no dress-code policy barring political, historical, or expressive imagery; that Plaintiff was first told her job was not in jeopardy and simply not to wear the shirt again; that Plaintiff complied; and that Defendants nevertheless terminated her three days later because three people complained. Importantly, the Complaint does not allege that Schmidt's symbolic speech was required by her employment or that it caused actual workplace disruption.

1   PLAINTIFF'S RESONSE TO DEFENDANT'S MOTION TO DISMISS

The federal issue at the center of this case—whether Plaintiff's expressive sartorial conduct is protected by the First Amendment and whether Defendants may justify terminating her for it—cannot fairly be resolved on a Rule 12(b)(6) motion. Defendants' brief accurately cites the public employee speech analysis under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), as well as the balancing test set out in *Pickering v. Board of Education*, 391 U.S. 563 (1968). The analysis is context specific and fact intensive.

While the Complaint plausibly establishes that Plaintiff was speaking as a private citizen on a matter of public concern, the Complaint does not establish, as a matter of law, that Defendants acted for legitimate operational reasons or that the alleged complaints amounted to the level of disruption necessary to prevail under Pickering.

## II. LEGAL STANDARD

### A.      Rule 12(b)(6) – Allegations in the Complaint Presumed to be True

To survive a Rule 12(b)(6) motion, a complaint need only contain sufficient factual matter to state a plausible claim for relief. A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010). A Rule 12(b)(6) motion is not a vehicle for weighing competing factual inferences, resolving motive disputes, or deciding a context-dependent constitutional balancing question where the complaint does not conclusively

establish Defendants' defense. *Dahlia v. Rodriguez,* 735 F.3d 1060, 1076, 1074 (9th Cir. 2013) (en banc) (at the pleading stage, the court's task is "not to resolve any factual dispute"), Eng v. Cooley, 552 F.3d 1062, 1071–72, 1074–75 (9th Cir. 2009) (*Pickering* balancing often involves underlying factual disputes), *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) (affirmative defense based on defendants' asserted motive could not justify dismissal because it was not apparent from the face of the complaint).

**B.    Defendants' Motion attempts to rewrite the case law rule**

Defendant's Motion conflates the requirements of an FRCP 12(b)(6) proceeding with a summary judgment proceeding.[1]  Defendants' Motion misstates case law when they describe what Plaintiff must allege in a Complaint to withstand dismissal.  On page 3 of their Motion, Defendants cite *Howard v. City of Coos Bay ,*871 F.3d 1032, 1046 (a summary judgment review), for what Plaintiff must do to "state a claim for First Amendment retaliation." However, Defendants' quote a section of Howard that that has nothing to do with stating a claim, or 12(b)(6) motions to dismiss.  In fact, the quote from *Howard* that Defendants' rewrote says: "To establish a prima facie case of First Amendment retaliation, a plaintiff must *prove* that "…and then lists the five steps in the *Pickering* test analysis the court must take. (emphasis added).

**Defendants brief:**

"To state a claim of First Amendment retaliation, Plaintiff must demonstrate that…."

***Howard v. City of Coos Bay***:

"To establish a prima facie case of First Amendment retaliation, a plaintiff must prove that…"

---

[1] Of the 86 cases Defendants cite in their Motion, only four address dismissal under FRCP 12(b)(6).  Most address the review of decisions made on Summary Judgment, after a factual record had been established on which to perform a *Pickering* balancing test.

On Page 4, Defendants state "At this stage, the Defendants contend that the Plaintiff has failed to carry her burden of proving the first element of the Pickering balancing test: that she engaged in protected speech.

Plaintiffs do not have a burden at this juncture to prove anything. So it is unclear why Defendants are pointing out that Plaintiff has not submitted sufficient proof while asking this Court to throw out the case before she gets an opportunity to do so.

Defendants again misstate the law on Page 4, when they write: "Plaintiff's burden is to establish that she engaged in protected speech. Plaintiff demonstrates a claim of engaging in protected speech if "(1) [s]he spoke 'on a matter of public concern,' and (2) that [s]he 'spoke as a private citizen' rather than as a 'public employee.'" *Burch v. City of Chubbuck, 146 F.4th 822 (9th Cir. 2025)* (quoting, 56 F.4th at 777) (emphasis in original).

The actual *Burch* case involved the review of a summary judgment with a developed factual record, prefaces the section Defendants quote: "We begin with the lodestar question of whether there is a genuine dispute as to whether either category of Burch's speech is protected. We answer this by assessing whether a reasonable factfinder could find that Burch established the first two Pickering steps…." *Id.*

Defendant's misstatement of the case law improperly imports an evidentiary burden into the pleading stage. Plaintiff's Complaint need not "demonstrate" nor "establish" anything. It only make plausible allegations of a First Amendment retaliation in order to survive Rule 12(b)(6) motion. Whether Plaintiff can ultimately prove facts alleged is a question for summary judgment or trial, not for a motion to dismiss. Accordingly, the issue before the Court is not whether Plaintiff has demonstrated or established a *prima facie* case, but whether the Complaint's factual allegations, assumed true, plausibly state claims.

## III. ARGUMENT

### A. The Complaint plausibly alleges speech on a matter of public concern

The Complaint states a plausible First Amendment retaliation claim under 42 U.S.C. § 1983. At this stage, Plaintiff need only plausibly allege that she engaged in protected expression and suffered an adverse employment action because of that expression. She has done so.

The *Pickering* balancing test starts with Schmidt's interests. See *Connick v. Myers*, 461 U.S. 138, 150 (1983) ("[T]he state's burden in justifying a particular [adverse action] varies depending upon the nature of the employee's expression."). Courts "have long recognized that [First Amendment] protection does not end at the spoken or written word." Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Non-verbal conduct implicates the First Amendment when it is intended to convey a "particularized message" and the likelihood is great that the message would be so understood. *Id*." *Nunez v. Davis*, 169 F.3d 1222 (9th Cir. 1999).

Public employees do not surrender all First Amendment rights by reason of their employment and may speak as citizens on matters of public concern. *Garcetti*, 547 U.S. at 417. Speech concerning public affairs occupies the highest rung of First Amendment values. *Connick v. Myers*, 461 U.S. at 145 (1983). The Ninth Circuit has likewise cautioned that Pickering balancing cannot serve as a pretext for stifling legitimate speech or penalizing public employees for expressing unpopular views. *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009).

Here, the Complaint alleges that Plaintiff's Norman Rockwell shirt touches on themes of racial justice, civil-rights history, racism, politics, and desegregation, in connection with the Ruby Bridges Walk to School Day that was happening a few days later. These themes are paradigmatic matters of public concern at the time she wore the shirt.

Defendants' motion cites *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d\ 968, 978 (9th Cir. 2002), a case that specifically addressed the speech of fired doctor who was critical of his employer's decision to lay off some other doctors. Defendants assert that Schmidt's speech is unprotected only if it helps the public evaluate MWVCOG's internal performance. While the Court in Ulrich found that his speech was a matter of public concern because of the public interest in evaluating the public hospitals performance as an instance of speech of public concern, it did not say that government employees' speech was so limited. The Ninth Circuit recently confirmed that Defendant's reading of Ulrich is way too narrow *Dodge v. Evergreen School District #114*, 56 F.4th 767 (9th Cir. 2022). Schmidt's, and all other public employees' public-concern speech, is not limited to whistleblowing or commenting about a government employer's misconduct or what is happening at work, nor must it be aimed to help the public evaluate anything.

This Court should focus on the Ninth Circuit's on-point reasoning in *Dodge*, as it is instructive on all the issues Defendants' raise in their motion to dismiss. In Dodge, the Ninth Circuit held that a teacher's expressive clothing, his MAGA hat, worn at a teacher-only training addressed a matter of public concern because content—not merely audience—drives the analysis, and held that Dodge's right to speak on issues of public concern did not warrant adverse employer action despite the complaint and offense of coworkers. Id. Plaintiff's allegations are at least as strong. Schmidt wore a historically accurate depiction of Ruby Bridges in the same broader public and civic context in which she and MWVCOG had been educating schools and the legislature about Ruby Bridges and the racism she endured.

Like Schmidt, the Plaintiff in *Dodge* was not communicating anything about his employer with his MAGA hat, any more the Complaint alleges that Schmidt was communicating about MWVCOG when she was wearing her Ruby Bridges shirt.

Defendants' brief to this Court seeks to strip the image of Ruby Bridges herself from the shirt, from history, and from this Court's consideration, and to isolate a single word from the rest of the painting. To do so ignores the context alleged in Plaintiff's complaint. The Complaint expressly alleges that the inclusion of the epithet in the Rockwell image was historical, documentary, and condemnatory—not abusive, endorsing, or directed at any person. On the pleadings, that allegation must be accepted as true.

**B. The Complaint Does Not Establish as a Matter of Law That Plaintiff Spoke Pursuant to Official Duties.**

Defendants argue that because Plaintiff's work involved Ruby Bridges programming, any expression by Plaintiff concerning Ruby Bridges automatically became unprotected employee speech under *Garcetti*. The Complaint and the law do not support that proposition. A person speaks in a personal capacity if she "`had no official duty' to make the questioned statements, or if the speech was not the product of `perform[ing] the tasks [she] was paid to perform.'" Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (citations omitted). There is a critical distinction between speech that merely relates to the same subject matter as one's job and speech that is itself required by, or made pursuant to, official duties. The Complaint alleges that Plaintiff wore her own shirt. It does not allege that MWVCOG directed her to wear it, required it for her job, paid her to wear it, or used it as official government messaging. Personal clothing is not transformed into official speech simply because it touches on a subject that overlaps with an employee's work.

*Dodge* is again instructive. There, the Ninth Circuit held that the teacher who wore a campaign hat at work engaged in private speech because he had no official duty to wear the hat and it was not required to perform his job. 56 F.4th at 777–80. The same reasoning applies here.

Defendant's motion asserts that Plaintiff "wore the shirt only at work." However, the Complaint does not allege that Shmidt arrived at work and put on the Norman Rockwell shirt and then took it off before she left. Regardless, the" limited circulation is not, in itself, determinative." *Jensen v. Brown*, 131 F.4th 677, 688 (9th Cir. 2025) (quoting *Demers v. Austin*, 746 F.3d 402, 416 (9th Cir. 2014)). Speech uttered, for example, only to a fellow employee or a workplace superior, "rather than to the general public," does not *necessarily* "remove it from the realm of public concern." *Id.* (quoting *Chateaubriand v. Gaspard*, 97 F.3d 1218, 1223 (9th Cir. 1996)).

Plaintiff's Complaint does not allege that her sartorial expression was part of her official duties.

**C. Pickering Balancing Cannot Be Resolved on the Face of the Complaint.**

Defendants ask the Court to decide Pickering at the pleading stage by treating the three alleged complaints about the shirt as conclusive proof of actual, material, and substantial workplace disruption. The Ninth Circuit has repeatedly recognized that Pickering balancing is highly fact sensitive. See *Eng*, 552 F.3d at 1071–72; *Moser v. Las Vegas Metro. Police Dep't*, 984 F.3d 900, 905, 911 (9th Cir. 2021). Even though the balance is ultimately a question of law, its resolution often entails underlying factual disputes.

That is especially true here. The Complaint alleges that Plaintiff was first warned only not to wear the shirt again, was told her job was not in jeopardy, complied with that instruction, completed her work related to Ruby Bridges Walk to School Day, and was then terminated three

days later after additional complaints. The Complaint does not identify the content of the complaints, does not allege that workplace operations were impeded, and does not establish that Plaintiff's expression impaired discipline, destroyed necessary working relationships, or interfered with the regular operation of the enterprise.

The Ninth Circuit has made clear that an employer cannot prevail under *Pickering* based on mere speculation that speech will cause disruption; the disruption must be real, not imagined. *Nichols v. Dancer,* 657 F.3d 929, 933–35 (9th Cir. 2011); *McKinley v. City of Eloy*, 705 F.2d 1110, 1115 (9th Cir. 1983). And in *Robinson*, the court stated that, to outweigh an employee's First Amendment interest, defendants must demonstrate actual, material, and substantial disruption or reasonable predictions of disruption grounded in evidence. 566 F.3d at 824. (emphasis added)

Recent Ninth Circuit authority reinforces that the government's burden becomes more demanding as the speech, like Plaintiff's Norman Rockwell shirt, moves closer to the core of public concern. See *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1139 (9th Cir. 2025); *Dodge*, 56 F.4th at 782. Accepting the Complaint's allegations as true, Plaintiff's speech involved civil-rights history and anti-racist expression—subjects at the highest level of constitutional concern. Defendants therefore cannot prevail on the pleadings absent a correspondingly strong showing of disruption, and the Complaint does not allege disruption.

At most, the Complaint establishes that three coworkers complained. That is not the same as significant disruption. Pickering balancing assumes that protected but unpopular speech may generate discomfort or disagreement. More is required. See *Settlegoode v. Portland Pub. Sch.,* 371 F.3d 503, 513 (9th Cir. 2004); *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). Because the pleadings do not establish Defendants' side of the Pickering balance, dismissal is improper.

**D. Qualified Immunity Does Not Warrant Dismissal at the Pleading Stage.**

Qualified immunity does not justify dismissal at this stage. A plaintiff need not identify a case directly on point so long as existing precedent placed the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Hope v. Pelzer,* 536 U.S. 730, 741 (2002).

In the *Pickering* context, the Ninth Circuit has repeatedly denied qualified immunity where the employee's speech interests clearly outweighed the employer's asserted efficiency interests, most recently in *Dodge*, despite the absence of a prior case where someone was fired for wearing a MAGA hat. See also, *Eng*, 552 F.3d at 1075-76 (holding no qualified immunity despite Pickering balancing); *Rivero v. City & Cty. of San Francisco*, 316 F.3d 857, 866-67 (9th Cir. 2002) (same); *Burgess v. Pierce Cty.*, 918 F.2d 104, 107 (9th Cir. 1990), abrogated on other grounds by *Johnson v. Jones,* 515 U.S. 304 (1995) (same); *Miller v. Clark Cty. Sch. Dist.*, 182 F. App'x 673, 674 (9th Cir. 2006) (same); *Settlegoode*, 371 F.3d at 516 (same) *Rigg v. California*, 32 F. App'x 398, 402 (9th Cir. 2002) (same); *Keyser v. Sacramento School District*, 265 F.3d 741 (same); *Nunez*, 169 F.3d at 1229. The should that this Court may deny qualified immunity despite *Pickering* even if this Court has "not previously addressed a case precisely like this one." Eng, 552 F.2d at 1076. It is enough for the plaintiff to show that a public official's speech suppression was "patently unreasonable." *Settlegoode*, 371 F.3d at 516.

Taking the Complaint's allegations as true, Plaintiff chose her expressive clothing as a private citizen on matters of contemporaneous public concern, did not engage in discriminatory conduct, complied with the only directive she was given, and was nonetheless terminated based on minimal alleged coworker disapproval that the Complaint does not show amounted to substantial disruption. Under these allegations, the first part of the *Pickering* balance plausibly

favors Plaintiff. At a minimum, Carmichael's qualified-immunity defense turns on the same unresolved factual questions that preclude dismissal of the underlying First Amendment claim.

Before reaching qualified immunity, however, this Court can and should first determine whether Schmidt states a claim that Carmichael violated her Constitutional right. See *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (confirming that it is "often appropriate" for a court to proceed in two steps, first deciding whether a constitutional violation occurred and then deciding qualified immunity). Because this case presents a crucial question about the power of the heckler's veto, this Court should issue an opinion that "promotes the development of constitutional precedent." *Id.*

Defendants' motion improperly asks the Court to reject Plaintiff's factual allegations, draw inferences against Plaintiff, and decide a fact-bound constitutional balance test without a record. Rule 12(b)(6) does not permit this. Because the Complaint plausibly alleges retaliation for protected speech in violation of clearly established First Amendment principles, qualified immunity should not be resolved in Defendant Carmichael's favor at this juncture because there is an insufficient factual record to establish that Defendants' purported "efficiency interests" justify a qualified immunity defense.

If Schmidt's "interest in exercising her First Amendment rights clearly outweighs [the employer's] asserted interest," *Nunez v. Davis*, 169 F.3d 1222, 1229 (9th Cir. 1999), then Carmichael cannot establish qualified immunity *and* necessarily loses on the underlying *Pickering* balancing question.

**E. The Section 1983 Claim Against MWVCOG Is Plausibly Alleged.**

Defendants argue that MWVCOG cannot be liable under § 1983 because respondeat superior does not apply. Plaintiff's theory, however, is not simple vicarious liability. A

municipality or local governmental entity may be liable where the challenged action was taken by an official with final policymaking authority in the relevant area or where such authority was delegated. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–84 (1986); *Barone v. City of Springfield,* 902 F.3d 1091, 1107–08 (9th Cir. 2018).

The Complaint alleges that Carmichael, as Interim Executive Director, terminated Plaintiff. At the pleading stage, that is enough to plausibly support the inference that the adverse action was taken by an official with final authority over the employment decision at issue or that the entity ratified the decision. The final-policymaker inquiry is issue specific and ordinarily cannot be resolved by abstract reference to a governing board's general authority. See *Pembaur*, 475 U.S. at 483–84; *Lytle v. Carl*, 382 F.3d 978, 982–83 (9th Cir. 2004).

Defendants' contrary theory depends on facts outside the Complaint concerning MWVCOG's internal allocation of authority and any ratification by its governing body. These are matters for discovery, not a basis for dismissal. The §1983 claim against MWVCOG is therefore plausibly pleaded.

**F. Plaintiff withdraws her State law claims**

Plaintiff elects to withdraw her third and fourth state law claims, and concedes that these may be dismissed

## IV. CONCLUSION

Defendants' motion asks the court to resolve issues of public concern, citizen speech, workplace disruption, *Pickering* balancing, qualified immunity, and municipal responsibility on a Rule 12(b)(6) record that must be construed in Plaintiff's favor, by dismissing the complaint. Schmidt's Complaint plausibly alleges that she was terminated for protected historical and political expression.  The Court should deny Defendants' motion.


April 3, 2026

LAW WORKS LLC

s/Lake James H. Perriguey
Lake Perriguey, OSB No. 983213
lake@law-works.com
1906 SW Madison St. Ste 201
Portland, OR 97205

*Attorney for Plaintiff*

# WORD COUNT CERTIFICATION

This brief complies with the applicable word count limitation under Local Civil Rule 7.1(c), because it contains 3,575 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature blocks, or required certificates.

April 3, 2026

LAW WORKS LLC
s/Lake James H. Perriguey
Lake Perriguey, OSB No. 983213
lake@law-works.com
1906 SW Madison St. Ste 201
Portland, OR 97205
*Attorney for Plaintiff*