Román D. Hernández, OSB No. 011730
rhernandez@cablehuston.com
Colin H. Milton, OSB No. 233800
cmilton@cablehuston.com
CABLE HUSTON LLP
1455 SW Broadway, Suite 1500
Portland, OR 97201
Telephone: (503) 224-3092
Facsimile: (503) 224-3176

    *Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

|  |  |
|---|---|
| BETH SCHMIDT, an individual | Case No. 6:26-cv-00002-AA |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| MID-WILLAMETTE VALLEY COUNCIL OF GOVERNMENTS, an Oregon public entity, and McRAE CARMICHAEL, in her individual and official capacities, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS'  MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...........................................................................................................ii

II.    ARGUMENT................................................................................................................ 1

    A.     Defendants Made no Attempt to Re-Write Case Law. ............................... 1

        1.     Defendants Made no Attempt to Alter the Standards Set Forth in Howard v. Coos Bay. .................................................................... 1

        2.     Defendants Mace no Attempt to Alter the Standards Set Forth in Burch v. City of Chubbuck. .......................................................... 2

        3.     By Using the Words "Demonstrate" or "Establish," Defendants Merely Sought to State that Plaintiff's Complaint Failed to State the Case for First Amendment Retaliation.................................... 2

    B.     Plaintiff Argues that the Court Should Take an Extreme View of What Constitutes Speaking on a Matter of Public Concern that is Unsupported by *Dodge*. ................................................................................................ 2

    C.     Plaintiff did not Wear Her T-Shirt as a Private Citizen at Work. ........................ 3

        1.     Plaintiff Spoke as a Public Employee When She Wore Her T-shirt with a Racial Slur on it to Work. .................................................. 3

        2.     Plaintiff Wore Her T-Shirt with a Racial Slur on it to Work, Which Distinguishes This Case From Dodge v. Evergreen School District. ......... 4

        3.     The Complaint Establishes as a Matter of Law That Plaintiff Spoke Pursuant to Her Official Duties.................................................... 4

    D.     The *Pickering* Balancing Test May be Resolved on the Face of the Complaint.................................................................................................. 5

    E.     On the Face of the Complaint, Actual Disruption to the Workplace Occurred...................................................................................................... 5

    F.     Defendant McRae Carmichael is Entitled to Qualified Immunity........................ 6

    G.     The Complaint has Not Alleged a Section 1983 Claim Against the Mid-Willamette Valley Council of Governments............................................. 7

    H.     The Court Should Dismiss All of Plaintiff's State-Related Claims........................ 8

III.   CONCLUSION............................................................................................................ 8

# TABLE OF AUTHORITIES

Page(s)

Cases

*Burch v. City of Chubbuck*,
  146 F.4th 822 (9th Cir. 2025) ................................................................................ 2

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) .............................................................................................. 7

*Damiano v. Grants Pass Sch. Dist.*,
  140 F.4th 1117 (9th Cir. 2025) ............................................................................ 6

*Dodge v. Evergreen Sch. Dist.*,
  56 F.4th 767 (9th Cir. 2022) ........................................................................ 4, 5, 7

*Howard v. Coos Bay*,
  871 F.3d 1032 (9th Cir. 2017) ............................................................................. 1

*Johnson v. Poway Unified Sch. Dist.*,
  658 F.3d 954 (9th Cir. 2011) ........................................................................... 3, 5

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) .............................................................................................. 7

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) .............................................................................................. 7

*Posey v. Pend Oreille Sch. Dist., No. 84*,
  546 F.3d 1121 (9th Cir. 2008) ............................................................................. 4

 *Rankin v. McPherson*,
  483 U.S. 378 (1987) .............................................................................................. 6

*Settlegoode v. Portland Public Schools*,
  371 F.3d 503 (9th Cir. 2004) ............................................................................... 6

Statutes

O.R.S. § 190.080(1)(c) ............................................................................................. 8

**INTRODUCTION**

Nothing in Plaintiff's response to the Defendants' motion to dismiss (hereinafter "Opp'n" or "Opposition") changes the fact that on the face of the Complaint, Plaintiff has failed to allege a claim of First Amendment retaliation. In Plaintiff's Opposition, Plaintiff seeks to argue that the Defendants have comported a wrong legal standard upon the Plaintiffs. Defendants have not. Plaintiff argues that there are no facts in the Complaint to support the Defendants' arguments, where there are. Defendants have not asked the Court to do anything it lacks the power to do, as Plaintiff suggests. Rather, the Defendants are seeking that the Court grant their Motion based on the facts alleged on the face of the Complaint.

Because of the reasons stated in the motion to dismiss and the following, Defendants respectfully request dismissal of all of Plaintiff's claims.

I.    **ARGUMENT**

   A.    **Defendants Made no Attempt to Re-Write Case Law.**

      1.    **Defendants Made no Attempt to Alter the Standards Set Forth in *Howard v. Coos Bay*.**

Plaintiff alleges that the Defendants "misstates" case law related to *Howard v. Coos Bay*, 871 F.3d 1032 (9th Cir. 2017). (Opp'n p. 3.) Plaintiff is correct in their citation to *Howard*, reading "[t]o establish a prima facie case of First Amendment retaliation, a plaintiff must prove that "(1) she engaged in protected speech[.]" 871 F.3d at 1044. Defendants in their recitation did not intend to imply that a different standard applied. Rather, Defendants merely argued that Plaintiff has failed to make the case of First Amendment retaliation, and apologize to the Court for any confusion their Opening Brief has caused.  It was not an intentional attempt to mislead the Court.

/ / /

Page 1 – REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### 2.    Defendants Made no Attempt to Alter the Standards Set Forth in *Burch v. City of Chubbuck.*

Plaintiff argues that Defendants misstate the law as it relates to *Burch v. City of Chubbuck*, 146 F.4th 822 (9th Cir. 2025). Defendants did not intend to imply that Plaintiff had some increased evidentiary burden. Rather, Defendants only sought to demonstrate that Plaintiff, in her Complaint, failed to state facts that plausibly support a claim that Plaintiff engaged in protected speech. The cited portion of *Burch* merely sketches out a plaintiff's requirement under the first two steps of the *Pickering* balancing test. 146 F.3d at 833. Moreover, it is unclear what Plaintiff seeks to argue when pointing out that *Burch* had "a developed factual record" – that is irrelevant to the fact that Plaintiff's Complaint has failed to state the plausible claims of First Amendment retaliation on the face of the Complaint. (Opp'n p. 4.)

### 3.    By Using the Words "Demonstrate" or "Establish," Defendants Merely Sought to State that Plaintiff's Complaint Failed to State the Case for First Amendment Retaliation.

Plaintiff suggests that Defendants' use of the words "demonstrate" or "establish" were seeking to hold Plaintiff to a higher "evidentiary burden" than required to survive a motion to dismiss. (Opp'n at 4.)  If Defendants' language implied such a thing, Defendants regret the error and apologize for any confusion caused.  It was not an intentional attempt to mislead the Court. All Defendants seek to argue at this point is that the Plaintiff has failed, based on the facts alleged in the Complaint, to allege facts that support a plausible case of First Amendment retaliation.

### B.    Plaintiff Argues that the Court Should Take an Extreme View of What Constitutes Speaking on a Matter of Public Concern that is Unsupported by *Dodge.*

Plaintiff argues that her T-shirt covered a matter of public concern because it is an "historically accurate, third-person depiction of racism, rather than [a] direct[ed] or

Page 2 –REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

contextualized use of racial language by the Plaintiff." (Compl ¶ 30.) The logical extension of this argument is that public employees ought to be able to wear whatever they like so long as it depicts historically accurate uses of racial slurs without fear of reprimand. This premise is unsupported by case law and public policy. In other words, to accept Plaintiff's argument would be an allowance for public employees to wear whatever they want to work so long it is an historically accurate depiction of racism which is clearly an undesirable goal.

C. **Plaintiff did not Wear Her T-Shirt as a Private Citizen at Work.**

    1. **Plaintiff Spoke as a Public Employee When She Wore Her T-shirt with a Racial Slur on it to Work.**

Plaintiff alleges that she spoke as a private citizen, but she was in fact acting as a public employee. (Opp'n p. 10.) The inquiry to determine whether speech is attributable to a private citizen or public employee is whether Plaintiff's speech "owes its existence to [her] position, or whether [s]he spoke just as any non-employee citizen could have." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 967 (9th Cir. 2011). *Johnson* is instructive because the court had to determine whether religious banners that a teacher hung up in his classroom was speech as a private citizen or public employee. The court reasoned that Johnson "did not act as a citizen when he went to school and taught class," and likewise, Plaintiff does not act as a citizen when she shows up to work and undertakes the duties of her job. *Id.* It was because the plaintiff in *Johonson*'s speech was reasonably viewed as official, that it was viewed as speech as a public employee. *Id.* at 968. Likewise, it is because Plaintiff wore the T-shirt to work that the nature of the speech owes itself to her position – she and only those who worked for MWVCOG – could have worn the shirt in and around the office of MWVCOG as the Plaintiff did.

/ / /

/ / /

Page 3 –REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**2.** **Plaintiff Wore Her T-Shirt with a Racial Slur on it to Work, Which Distinguishes This Case From *Dodge v. Evergreen School District*.**

Plaintiff's reliance on *Dodge v. Evergreen Sch. Dist.* is misplaced because that was a case where a school punished an employee speaking as a private citizen, and here, Plaintiff was speaking as public employee. 56 F.4th 767, 778 (9th Cir. 2022). The Plaintiff in *Dodge* wore his MAGA hat to a work training session, which the Court did not consider to be at work, and therefore the plaintiff was speaking as a "private citizen[.]" *Id.* This makes the facts of *Dodge* clearly distinguishable from the case at hand where Plaintiff was terminated for her t-shirt wearing at work. It is undisputed that Plaintiff wore her T-shirt to work. (Compl. ¶ 18.) *Dodge* was a case where the government punished a public employee for his speech as a private citizen, which clearly distinguishes the case at hand where the Plaintiff was dismissed for her speech as a public employee.

**3.** **The Complaint Establishes as a Matter of Law That Plaintiff Spoke Pursuant to Her Official Duties.**

Plaintiff's T-shirt wearing was a product of performing the tasks she was paid to perform. A Plaintiff speaks as a public employee when their speech is a "product of perform[ing] the tasks [the employee] was paid to perform." *Posey v. Pend Oreille Sch. Dist., No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (internal quotation omitted) (alterations in original). Plaintiff, as "part of her official job duties . . . conceived, developed, and implemented Ruby Bridges Walk to School Day in Oregon[.]" (Compl. ¶ 14.) It is improper to suggest – as Plaintiff does – that Plaintiff decided to wear a T-shirt depicting Ruby Bridges and that the decision was not a product of her work implementing Ruby Bridges Walk to School Day in Oregon.

Plaintiff spoke pursuant to her official duties even though no one at MWVCOG instructed her to wear the T-shirt. (Opp'n at 7.) Case law is clear that an employee's speech at work can be reasonably attributed to the employer based on the context. This was held where a

Page 4 –REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

teacher posted large religion banners in a classroom which the court noted that "one might reasonably view as official." *Johnson*, 658 F.3d at 967–68. *Johnson* is analogous because the employees were not directed by their employer to make such speech, but because of the context of the speech it was reasonable to attribute the speech to the public employer. Here, Plaintiff was tasked with implementing Ruby Bridges Walk to School Day in Oregon and her T-shirt, depicting Ruby Bridges, could reasonably be attributed to her employer MWVCOG, thus making her speech that of a public employee even though no one at MWVCOG instructed her to wear the T-Shirt. (Opp'n at 7.)

Plaintiff's reliance on *Dodge* is again misplaced. The speech in *Dodge* was not "reasonably viewed by students and parents as officially promoted by the school" because the plaintiff in *Dodge* was wearing the hat to an off-hours training session. 56 F.4th at 778. That distinction cannot be made in this case. Rather here, because of where Plaintiff wore her T-shirt and the subject matter of the T-shirt, one would reasonably view the speech as being promoted by the Mid-Willamette Valley Council of Governments ("MWVCOG").

**D.      The *Pickering* Balancing Test May be Resolved on the Face of the Complaint.**

Plaintiff suggests that because questions related to *Pickering* balancing are highly fact-intensive, they should not be decided at this stage – this is not correct because the question is a matter of law; something Plaintiff acknowledges. (Compl. ¶ 28; Opp'n at 8.) Questions of fact may be determined by a judge without further factual development particularly when Plaintiff, on the face of the Complaint, has failed to state a plausible case for First Amendment retaliation.

**E.      On the Face of the Complaint, Actual Disruption to the Workplace Occurred.**

The face of the Complaint "establishes that three coworkers complained[,]" which admits that actual disruption occurred because of Plaintiff's T-shirt. (Opp'n p. 9.) Under the *Pickering*

Page 5 –REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

balancing test, "no minimum number [of complaints] determines whether disruption is substantial or material." *Damiano v. Grants Pass Sch. Dist.*, 140 F.4th 1117, 1144 (9th Cir. 2025). Further, the Court "cannot rule out the possibility that just one serious complaint could constitute actual, material, and substantial disruption, or support a reasonable prediction of such disruption." *Id.*

Here, taking the Complaint's allegation of three complaints as true, represents actual, material, and substantial disruption to MWVCOG. Complaints may represent disruption. *Id.* Plaintiff's cases used in support that "[m]ore is required" to show disruption are unavailing. (Opp'n p. 9.) In *Settlegoode v. Portland Public Schools*, the employer "presented very little evidence of disruption" by way of showing that the employee sent "internal letters" and "discuss[ed] the issue with supervisors." 371 F.3d 503, 514 (9th Cir. 2004). Likewise, in *Rankin v. McPherson*, there was "no evidence that [the statement at issue] interfered with the efficient functioning of the office." 483 U.S. 378, 389 (1987). Moreover, the testimony in *Rankin* indicated that "the possibility of interference with the functions of the Constable's office had *not* been a consideration in his discharge of" the employee. *Id.* (emphasis in original). Three complaints are certainly more evidence of disruption than what occurred in *Settlegoode* and *Rankin*. It is unclear why Plaintiff cited these cases – where the defendants failed to make allegations of disruption – as demonstrating that three complaints were somehow insufficient to show actual disruption to MWVCOG.

### F.     Defendant McRae Carmichael is Entitled to Qualified Immunity.

Qualified immunity serves as an "*immunity from suit* rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). This indicates that this issue is ripe for determination at the motion to dismiss stage.

Plaintiff alleges that because of the *Dodge* decision, Defendants should have been on notice that Plaintiff could not have taken an adverse action against Plaintiff for her T-shirt. Plaintiff's reliance on *Dodge* is misplaced because that case involved a public employee who was fired for speech as a private citizen. 56 F.4th at 778 ("we have little trouble concluding that [Dodge] was engaging in expression as a private citizen, not a public employee."). It is entirely clear that a public employee cannot typically be punished for speech that was not made at work, but that is a distinct and factually different scenario than what the Complaint alleges. The Complaint only alleges that Plaintiff was dismissed for her speech at work.

### G.    The Complaint has Not Alleged a Section 1983 Claim Against the Mid-Willamette Valley Council of Governments.

All the Complaint alleges is that Carmichael "terminated Plaintiff's employment, alleging that three people had complained about the shirt." (Compl. ¶ 28.) Plaintiff claims this is enough to "plausibly support the inference that the adverse action was taken by an official with final authority over the employment decision or that the entity ratified the decision." (Opp'n p. 12.) This is not so.

The question of "whether a particular official has 'final policymaking authority' is a question of *state law*." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)) (emphasis in original). Additionally, courts are "not [] justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126. As discussed in the Motion to Dismiss, state law places the power to make policy decisions with the board of MWVCOG. O.R.S. § 190.080(1)(c). The Complaint has not alleged, and nor does it support, the inference that Carmicheal held final policy making authority, and therefore it is inappropriate to attach liability against MWVCOG.

Page 7 –REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**H.     The Court Should Dismiss All of Plaintiff's State-Related Claims.**

After reviewing Defendants' Motion to Dismiss, the Plaintiff has voluntarily withdrawn all of her state law-based claims. On that basis the Court should dismiss those claims. (Opp'n p. 12.) While Plaintiff's Opposition only references Plaintiff's "third and fourth state law claims," Plaintiff's counsel and Defendants' counsel conferred and confirmed this was intended to also include Plaintiff's second claim for relief based on the Oregon Constitution.

**II.     CONCLUSION**

For the forgoing reasons, Defendants respectfully request that the Court dismiss all claims asserted against Defendants.

DATED:  April 17, 2026.

CABLE HUSTON LLP


By s/ Román D. Hernández
    Román D. Hernández, OSB No. 011730
    rhernandez@cablehuston.com
    Colin H. Milton, OSB No. 233800
    cmilton@cablehuston.com
    1455 SW Broadway, Suite 1500
    Portland, OR  97201

    *Attorneys for Defendants*