IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

BETH SCHMIDT,                                              Civ. No. 6:26-cv-00002-AA

                Plaintiff,                        **OPINION & ORDER**

      v.

MID-WILLAMETTE VALLEY
COUNCIL OF GOVERNMENTS,
an Oregon public entity; and
McRAE CARMICHAEL, in her
individual and official capacities,

                Defendants.

_____

AIKEN, District Judge.

This case comes before the Court on a Motion to Dismiss filed by Defendants Mid-Willamette Valley Council of Governments ("MWVCG") and McRae Carmichael ("Defendants"). ECF No. 7. Oral Argument was held on July 7, 2026. ECF No. 13. For the reasons set forth below, Defendants' Motion is DENIED.

## BACKGROUND

Plaintiff Beth Schmidt ("Plaintiff") was employed by MWVCG as a Safe Routes to School Program Coordinator. Compl. ¶ 13. In that capacity, she "conceived, developed, and implemented Ruby Bridges Walk to School Day in Oregon." *Id.* ¶ 14. Over time, the event expanded from one Salem, Oregon school in 2022 to eleven schools in 2025. *Id.* In 2025, Oregon became the third state to pass legislation

Page 1 – OPINION AND ORDER

commemorating "Ruby's brave walk[.]" *Id.*; 2025 Oregon Laws Ch. 367 (S.B. 450). Plaintiff worked with Oregon State Senator Deb Patterson to pass the legislation, which was signed by Governor Tina Kotek on June 20, 2025. Compl. ¶ 15.

A brief examination of the history surrounding Ruby Bridges, as set forth in S.B. 450, will provide valuable context for the present case.

Ruby Bridges was born on September 8, 1954, only months after the Supreme Court of the United States decided *Brown v. Board of Education.* 2025 Oregon Laws Ch. 367 (S.B. 450). That seminal ruling for the first time held that racial segregation in schools was unconstitutional.

Five years later, in 1959, Ruby attended a segregated kindergarten in New Orleans, Louisiana. *Id.* The next year, "Ruby was one of six Black children in Louisiana to pass a test to determine whether they could attend the previously all-white William Frantz Elementary School, and . . . she was the only Black child who chose to attend the school that year[.]" *Id.*

On November 14, 1960, "[Ruby] walked to William Frantz Elementary School flanked by four deputy U.S. marshals, the first Black child in the south to attend a previously all-white school." *Id.* "Ruby's brave walk that day was immortalized by Norman Rockwell in his iconic 1964 painting, The Problem We All Live With[.]" *Id.*

The painting by Norman Rockwell is at the heart of this case.[1] In the painting, Ruby is depicted walking with books, a ruler, and pens and pencils under her arm.

---

[1] The painting appeared on the cover of *Look* magazine on January 14, 1964, and was displayed at the White House on the wall outside the Oval Office during the summer of 2011. William Allman, *President Obama Meets Civil Rights Icon Ruby Bridges*

Page 2 – OPINION AND ORDER

*See* Compl. at 5 (image of painting). The four deputy U.S. marshals are cropped at the shoulder, so Ruby is the only person whose face is visible. The background of the painting is a wall, and on that wall are the splatters of tomatoes and graffiti spelling out the initials "K.K.K," and a racial slur.

Plaintiff wore a shirt to work on November 5, 2025, upon which was an accurate depiction of the "iconic" Rockwell painting. Compl. ¶ 18. On November 10, 2025, Defendant Carmichael allegedly told Plaintiff that "she was not permitted to appear at the [Salem] City Council [,]" where Plaintiff had been scheduled to accept a "Ruby Bridges Walk to School Day Proclamation by the City of Salem[.]" *Id.* ¶ 22. On November 12, 20205, Plaintiff was told to not wear the shirt to work again, due to the racial slur in the background. *Id.* ¶ 24. "Plaintiff did not wear the shirt again to work nor anywhere." *Id.* ¶ 27. Plaintiff was also assigned "several training modules" on the topic of "diversity, equity, and inclusion." *Id.* ¶ 25. On November 17, 2025, three days after the first state-sanctioned Ruby Bridges Walk to School Day, Plaintiff's employment was terminated by Defendants because three people had allegedly complained about the shirt Plaintiff wore on November 5, 2025. *Id.* ¶ 28.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's allegations, a court must accept a

---

(July 15, 2011 6:54 p.m.) *https://obamawhitehouse.archives.gov/realitycheck /node/58717/* (last visited July 8, 2026.)

Page 3 – OPINION AND ORDER

plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the action's elements. *Id.* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To survive a motion to dismiss, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### DISCUSSION

Before the Court is a motion to dismiss a claim for First Amendment retaliation under 42 U.S.C. § 1983.[2] A prima facie case for a First Amendment

---

[2] Plaintiff's Complaint includes three state law claims, but Plaintiff has agreed to drop those claims, *see* Pl. Resp. at 12 and Def. Reply at 8, so the Court's analysis is limited to the First Amendment claim.

Page 4 – OPINION AND ORDER

retaliation claim by a public employee requires that "'(1) [the plaintiff] engaged in protected speech; (2) the defendants took an 'adverse employment action' against [the plaintiff]; and (3) [the plaintiff's] speech was a 'substantial or motivating' factor for the adverse employment action.'" *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022) (quoting *Howard v. City of Coos Bay*, 871 F.3d 1032, 1044 (9th Cir. 2017)).

A public employee's First Amendment retaliation claim is subject to the two-part *Pickering* test. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The first step is the prima facie case. For the second step, "'the burden of evidence and persuasion shifts to the Defendants to show that the balance of interests justified their adverse employment decision.'" *Dodge*, 56 F.4th at 776 (quoting *Eng v. Cooley*, 552 F.3d 1062, 1074 (9th Cir. 2009)).

The parties do not dispute that termination is an adverse action, nor that the adverse action was caused by Plaintiff's speech. The dispute is whether Plaintiff's speech was constitutionally protected.

## I.    Protected Speech

For a public employee's speech to be constitutionally protected, the speech must be (1) "on a matter of public concern" and (2) the employee must "sp[eak] as a private citizen rather than a public employee." *Dodge*, 56 F.4th at 777 (internal quotations and citations omitted).

Page 5 – OPINION AND ORDER

### a. Public Concern

"Speech addresses an issue of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest." *Dodge,* 56 F.4th at 777 (internal citations and quotations omitted). "What constitutes public concern is defined broadly based on the content, form, and context of a given statement, as revealed by the whole record[.]" *Id.* (internal citations and quotations omitted).

Defendants argue that the speech at issue—the wearing of the shirt—was not on an issue of public concern because it "does not inform the public about the operations of MWVCOG or provide the public with any additional information to make any informed decisions about MWVCOG." Def. Mot. at 5. Additionally, "[t]he point of her speech was not to inform the wider public but rather to make some kind of statement, just to her work colleagues." *Id.* at 6.

For a public employee, "matter of public concern" is not limited to information regarding the employing entity that would help the public evaluate or make decisions about the employing entity, nor is there a requirement to be communicating with the "wider public." The Ninth Circuit's decision in *Dodge* makes this clear.

In *Dodge,* a public-school teacher took a Make America Great Again ("MAGA") hat to a training event with other teachers, which qualified as speech on a matter of public concern. *Dodge*, 56 F.4th. at 777. Nothing about a MAGA hat relates to the evaluation of the school system. The audience was not the wider public, but mainly co-workers and fellow teachers. *Id.* at 773. Defendants' attempt to severely narrow

Page 6 – OPINION AND ORDER

this element is directly at odds with the command that "public concern is defined broadly."

Here, Plaintiff wore a shirt bearing an "iconic" painting depicting an event in the historic struggle for civil rights in the United States, which continues to this day. The painting itself was referenced by the Oregon Legislature in legislation signed by the Governor of Oregon less than six months before Plaintiff wore the shirt to work. Plaintiff wore the shirt less than two weeks before the first state-sanctioned commemoration of the event depicted in the painting—Ruby Bridges's Walk to School Day. See ORS § 187.314 (effective June 20, 2025 and creating Ruby Bridge's Walk to School Day). Additionally, on November 10, 2025, the Salem City Council issued a proclamation about the commemoration.

In this context, Plaintiff plausibly alleges that in wearing the shirt, she spoke on a matter of public concern.

### b. Private Citizen or Public Employee

Whether a public employee was speaking as a private citizen or a public employee "depends on the scope and content of [the plaintiff's] job responsibilities." *Dodge* 56 F.4th at 778 (internal quotation and citations omitted). "A person speaks in a personal capacity if [the person] had no official duty to make the questioned statements, or if the speech was not the product of perform[ing] the tasks [the person] was paid to perform." *Id.* (internal citations and quotations omitted).

Defendants argues that Plaintiff was speaking as a public employee because: (1) she was at work; (2) the day was routine; and (3) "it appears unlikely that Plaintiff

Page 7 – OPINION AND ORDER

would have worn the t-shirt outside of her job which, in part, involved organizing Ruby Bridges Walk to School Days." Def. Mot. 7-8. Defendants also assert "it is because Plaintiff wore the T-shirt to work that the nature of the speech owes itself to her position – she and only those who worked for MWVCOG – could have worn the shirt in and around the office of MWVCOG as the Plaintiff did." Def. Reply at 3.

None of these arguments address the central question. Whether Plaintiff was at work while wearing the shirt is not dipositive, as that would run counter to *Dodge*. Whether the day was routine or not is also irrelevant. The Constitution does not apply only to special occasions; in fact, as far as this Court is concerned, the Constitution does not take days off at all.

*Dodge* is again informative. As in the present case, the plaintiff in *Dodge* had two work environments: one behind the scenes, working alongside colleagues, and the other facing the public. In *Dodge*, it was crucial that the plaintiff did not wear or show the MAGA hat to his students, as the students likely would have considered the speech to be in the teacher's official capacity as a public employee. Here, if Plaintiff had worn the shirt to a public event in which she had a professional role (such as accepting the proclamation from the city council), her speech—the shirt—could have similarly been interpreted as that of a public employee. But Plaintiff wore it among colleagues, as did the plaintiff in *Dodge*.

The Defendants' comparison to *Johnson v. Poway Unified School District*, 658, F.3d 954, 967 (9th Cir. 2011), is apt, but for the opposite proposition for which it is offered. The plaintiff in *Johnson* was a teacher, like in *Dodge*, and, as Defendants

Page 8 – OPINION AND ORDER

say, "[t]he court reasoned that Johnson 'did not act as a citizen when he went to school and taught class[.]'" Def. Reply at 3 (quoting *Johnson*, 658 F.3d at 967). *Dodge* discusses *Johnson* and clarifies that the crucial fact in *Johnson* is not that the plaintiff was at work, but that his speech was in front of students. See *Dodge*, 56 F.4th at 778. In that context, students and parents would reasonably view him as a public official, not just a private citizen expressing himself. That is why "the plaintiff in *Johonson*'s [sic] speech was reasonably viewed as official." Def. Reply at 3. Here, there is no indication in the Complaint that Plaintiff would be viewed by her colleagues the way the plaintiff in *Johnson* was viewed by his students and their parents.

Defendants make the bewildering argument that Plaintiff was acting as a public employee because "[Plaintiff] and only those who worked for MWVCOG . . . could have worn the shirt in and around the office of MWVCOG as the Plaintiff did." The Court generally acknowledges that it seems likely only those who worked for MWVCG would normally be in the MWVCG offices. However, this "fact," even if accepted (which would go beyond what is permissible in ruling on a Rule 12(b)(6) motion), is irrelevant to the Court's analysis.

Taking the allegations in the light most favorable to Plaintiff, she has plausibly alleged that her speech was that of a private citizen. At this stage, that is enough.

## II.    Pickering Step Two

Defendants ask the Court to dismiss the Complaint based on the second step of the *Pickering* test: balancing. Def. Mot. at 8. At that step, "'the burden shifts to the

Page 9 – OPINION AND ORDER

defendant to show that its legitimate administrative interests outweigh the plaintiff's First Amendment rights.'" *Jensen v. Brown*, 131 F.4th 677, 690-91 (9th Cir. 2025) (quoting *Bauer v. Sampson*, 261 F.3d 775, 784 (9th Cir. 2001)).

"'In many cases, factual development is necessary, so the balancing cannot be performed on a 12(b)(6) motion.'" *Id.* at 691 (quoting *Weisbuch v. County of L.A.*, 119 F.3d 778, 783 (9th Cir. 1997)). "Where the facts alleged do not decisively indicate that the state's interest outweighs the plaintiff's, the *Pickering* balancing is generally deferred at least to the summary judgment stage." *Id.* The burden-shifting "require[s] the defendant to prove facts beyond those necessary to support the plaintiff's *prima facie* case, making it difficult to assess the defense's merit on a 12(b)(6) motion where review is limited to the allegations in the complaint." *Id.*

Defendants argue that *Pickering* balancing is a matter of law, and thus can— and by implication, *should*—be decided at this stage. Def Reply at 5. While the Court agrees that the question is a matter of law, Defendants provide no authority that this should be decided on a Rule 12(b)(6) motion before discovery or the development of a factual record. Further, the Ninth Circuit counsels against such a decision in these circumstances. As the Ninth Circuit observed in *Jensen*, resolution of the question of law still requires the presentation of sufficient facts.

Here, the Complaint alleges that Defendant Carmichael "alleg[ed] that three people complained about the shirt." Compl ¶ 28. Under no circumstances could that bare allegation "decisively indicate that the state's interest outweighs the plaintiff's First Amendment rights."

Page 10 – OPINION AND ORDER

On the face of the Complaint, the Court cannot perform the second step of the *Pickering* analysis. Factual development of the record on this issue is necessary.

### III.    Qualified Immunity

"'Qualified immunity is an affirmative defense that must be raised by a defendant.'" *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001)). "'[D]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Jensen*, 131 F.4th at 695 (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)). "When . . . defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), 'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'" *O'Brien*, 818 F.3d at 936 (quoting *Groten*, 251 F.3d at 851).

Here, the Court cannot determine based on the Complaint itself whether qualified immunity applies. As the *O'Brien* Court said: "Our denial of qualified immunity at this stage of the proceedings does not mean that this case must go to trial. Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity." *O'Brien*, 818 F.3d at 936.

The Court therefore declines to dismiss the Complaint based on qualified immunity, as noted at oral argument.

Page 11 – OPINION AND ORDER

## CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss, ECF No. 7, is

DENIED.

It is so ORDERED and DATED this ___10th___ day of July 2026.


 /s/Ann Aiken                     
ANN AIKEN
United States District Judge